[Crim. No. 467. Fourth Dist. Aug. 25, 1941.]

THE PEOPLE, Respondent, v. DUANE W. BUCK, Appellant.

Geo. A. Westover and Edward W. Goodman for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

MUNDO, J., *pro tem.*—██ Defendant was convicted of the crime of rape, and he appeals from the judgment and the order denying his motion for a new trial. He also appeals from an order made after judgment denying his motion to "amplify" the record on appeal. This latter motion was filed five days after the rendition of the judgment and by said motion defendant sought to have certain affidavits, attached to his motion, made a part of the record on appeal in support of his ground on appeal that his constitutional rights were invaded in that he was not accorded a public trial. In addition to these appeals the appellant has moved this court for diminution of the record. In his brief appellant urges that his appeal taken from the order made after judgment be incorporated with his appeal from the judgment of conviction and order denying his motion for a new trial, and that this court direct the lower court to correct its record by incorporating therein the said affidavits and to certify the record as so corrected to this court. We are unable to comply with this request.

To amplify is to enlarge or expand in statement or in treatment. Nowhere do we find authority to enlarge or expand the record on appeal except as that process might take place

when the record is corrected by the addition of matters which should have come up with the record. If there is any error in the record on appeal the application to correct it should be made to the trial court. (*Boyd* v. *Burrel*, 60 Cal. 280; *In re Johannes*, 213 Cal. 125 [1 Pac. (2d) 984].) That court has the power to alter the record so as to make it speak the truth (*Sheldon* v. *Gunn*, 57 Cal. 40; *O'Hare* v. *Peacock Dairies, Inc.*, 39 Cal. App. (2d) 506 [103 Pac. (2d) 594]), and for the purpose of correcting any error or defect in the transcript the appellate court may make its order for diminution of the record. (Rule XIV, Rules for the Supreme Court and District Courts of Appeal.) The appellate court may also require the production of a certified copy of any paper or record which was before the trial court and make it a part of the record on appeal if it will assist in a determination of the appeal on its merits. (Code Civ. Proc., sec. 953; *Shively* v. *Kochman*, 20 Cal. App. (2d) 688 [68 Pac. (2d) 255].) But in the instant case we are not called upon nor was the trial court called upon to correct the record or to cure any defect in it or to add any document to perfect the record. What appellant would ask us to do is to add to the record affidavits which were prepared after the appeal from the judgment was taken and which deal with a subject which could have been addressed to the trial court upon the motion for a new trial. No error appears in this connection. (*People* v. *Center*, 54 Cal. 236; *People* v. *Mayne*, 118 Cal. 516 [50 Pac. 654, 62 Am. St. Rep. 256] ; *Estate of Davis*, 151 Cal. 318 [86 Pac. 183, 90 Pac. 711, 121 Am. St. Rep. 105] ; *People* v. *Sonoqui*, 1 Cal. (2d) 364 [35 Pac. (2d) 123] ; *In re Johannes, supra; People* v. *Carkeek*, 35 Cal. App. (2d) 499 [96 Pac. (2d) 132] ; *State ex rel O'Grady, et al.*, v. *District Court of Twentieth Judicial District, etc.*, 61 Mont. 346 [202 Pac. 575].)

■ The motion for diminution of the record is supported by a certified transcript of the proceedings had on the motion to amplify the record and included in the transcript are the affidavits which appellant requests be ordered up as a part of his record on appeal. These affidavits are to this effect: That prior to the time that the court instructed the jury the court announced, "Any one desirous of leaving the court-room please do so at this time as no one will be permitted to leave or enter the courtroom during these instructions. All right, mister bailiff, close the door"; that immediately after

this announcement several persons left the audience and went outside; that there were still a number of persons in attendance but there also were a number of vacant seats; that during the instructions the doors of the courtroom were kept locked; that after the instructions had been given the doors were reopened and several persons entered the courtroom; that there was no commotion, disorder, or unusual noise either in the courtroom or which could be noticed from the outside. The declared purpose of these affidavits is to show that the appellant was not given a fair, public trial. Even if the appellant were entitled to diminution of the record we would have to say that we cannot agree with his contention that he did not have a fair, public trial. Defendant made no objection to the order of the court closing the doors during the time the jury was being instructed, nor did he raise the matter on his motion for a new trial. It was presented for the first time in his notice of appeal filed with the trial court on the day following the pronouncement of judgment. It is apparent that the order was made for the convenience of the court and all others present, including the appellant. It was made to facilitate the instructing of the jury and to obviate the disturbance and distraction which is made by spectators entering or leaving while the court is giving its instructions. This seemingly was the view taken at the time by the appellant and his counsel for no complaint was made during the trial. The court did not order anyone to leave the courtroom. It merely attempted to keep the spectators from moving in or out during the period of instruction. In this particular instance it is to be observed that the court instructed the jury before the argument of counsel and that the doors of the courtroom were opened during the argument. The term "public trial" is used in a relative sense and its meaning depends largely upon the circumstances of each particular case. Here we cannot say that the order in question prejudiced the defendant's rights or that he was thereby deprived of a fair, public trial. We do not deem it proper in the circumstances to grant the motion, and the motion for diminution of the record is denied. (*Ferguson* v. *Oildale Mutual Water Co.*, 78 Cal. App. 74 [248 Pac. 256]; *Schelling* v. *Thomas*, 96 Cal. App. 682 [274 Pac. 755].)

At this juncture it is well to state briefly the facts of the case in order to consider appellant's other points on these appeals. The prosecutrix, aged 19 years and married, left

her home on the night of March 13, 1941, about 10 p. m. to accompany a girl friend to the corner where the latter would board a street car. The prosecutrix, in returning to her home, passed by an alley and noticed the defendant, a stranger to her, stagger over towards the fence. She became frightened and was getting ready to run when the defendant grabbed her. She screamed. Defendant put her head on the ground and choked her to such an extent that she lost consciousness for a few minutes. It was raining and she carried an umbrella and wore galoshes. Her umbrella caught on a picket fence. With his left arm around her neck, his left hand on her throat, and pulling on her hair on the right-hand side of her head with his right hand, defendant took prosecutrix down the alley. After she had taken about three steps down the alley she lost her shoe and the galosh from the right foot in a big mud hole. Prosecutrix weighed about 112 pounds. While walking along with the defendant in this manner she said to him "Please don't kill me." He told her to "Shut up." He hit her on the head again and said he had killed a man and if she did not do as he said he would kill her. He held her throat so tightly she could not holler and she was so weak she could hardly stand. He took her down the hill to where there was a lot of tall grass and pushed her down on the ground. Defendant then committed an act of sexual intercourse upon her. She did not fight him because she thought he would kill her before anyone arrived. Following the commission of this act she states that he took out his wallet and said: "Here, let me pay you." She said: "I don't want your money." They then came out into the street with defendant holding her arm and prosecutrix walking in front of him a little ways. While so walking he kept mumbling to himself, which she paid no attention to because she was thinking about getting away from him. When they got back to the street and while he was looking for her lost shoe, she went and got her umbrella off the picket fence. He told her that if she told anyone he would "get her." She then ran south towards her home. Upon arriving at her home she was crying and she called her landlady. There was a big bump on her head; her neck was bruised; she had only one shoe which was full of water and mud; and her coat and dress were muddy. The landlady called the police.

Witnesses living near the alley testified that they heard a woman scream and they gave testimony which corroborated prosecutrix in other particulars.

The police officer testified that when he called at prosecutrix's house he found her in a disheveled condition and complaining of an injury to her head. The officer saw a laceration on the top of her head probably about 5/8 of an inch long and bleeding slightly. Her scalp was broken and swollen.

Defendant was apprehended. His shoes and pants up to his waist were all wet and muddy. His hands were also muddy. At first he denied having any girl down the alley and then he said: "All right, I was standing at the alley"; that this girl was walking along and as she came near him he flashed a two-dollar bill toward her and said "How about it, Kid"; that she nodded her head in agreement; that the idea probably struck him and the girl at the same time; and that she went with him. The next morning the defendant changed his story and stated that the former story given was a lie; that he had been drinking; that he met the girl and what happened he didn't really know. He said: "I just saw the girl, fell in step with her, and evidently tried to attack her. I helped her look for her shoe after the assault. I didn't know very much about what I was doing. I was kind of dazed,—didn't know what I was doing, and I think I walked up the street to the Copper Kettle." The officer then asked him if he told his wife what had happened and the defendant said he had told his wife the truth of the matter, that he just got crazy drunk and assaulted the woman. At the time of this particular conversation the defendant's wife was standing close to him.

While the prosecutrix was being cross-examined at the trial, the following took place: "Q. . . . you first refused to sign the complaint in this case, didn't you? MR. BARBOUR: I object to that as incompetent, irrelevant and immaterial, not proper cross-examination. THE COURT: Let me have the question, please. The question is read by the reporter. THE COURT: Overruled. A. No. BY MR. WESTOVER: Q. You did not? A. No. Q. Did you tell anybody that you had refused to sign the complaint in this case? MR. BARBOUR: I object to that as not proper cross-examination. THE COURT: Sustained. A. No. THE COURT: Don't answer when I sustain an objection. MR.

BARBOUR: I move to strike the answer. THE COURT: It may be stricken. BY MR. WESTOVER: Q. When did you sign the complaint? A. The next day. MR. BARBOUR: I object to that . . . the file speaks for itself. THE COURT: The question has been answered. MR. WESTOVER: That is all.''

Appellant contends that the ruling of the trial court was erroneous. He claims that the prosecutrix's story, when taken in conjunction with physical circumstances surrounding the affair, shows equivocation such as is pointed out by the court in the case of *People* v. *Brown*, 138 Cal. App. 748 [33 Pac. (2d) 460]. In that case the trial court sustained an objection to this question asked of the prosecutrix on cross-examination: ''Well, Miss Miller, is it not a fact that you immediately after preferring these charges against Mr. Brown, you asked that they be dismissed?'' Upon appeal it was held that this was proper cross-examination for the reason that the jury may properly consider the conduct of a prosecutrix towards a defendant after the alleged commission of a crime. The court said: '' . . . and where, as here, there was evidence sufficient to support defendant's version of the affair we cannot say that an affirmative answer to the rejected question, taken with the flippant reply of the prosecutrix to the question whether she scratched the defendant, would not have convinced the jury that her story was untrue.'' In the instant case no flippant reply was made by the prosecutrix to any question propounded to her and the circumstances as related by her testimony were corroborated by other witnesses to such an extent that there was no room for doubt as to the truth thereof. This case differs from the Brown case in these particulars, and it is difficult to see how the result could have been different even if she had given an affirmative answer to the question.

The circumstances here do not disclose a case where a verdict for the defendant would have been fairly supported. The prosecutrix's account of the affair, taken in connection with the physical circumstances, is not equivocal, as in the Brown case. On the other hand, the defendant's version of the affair related by him on the witness stand, was unsupported by any evidence and could easily have been disbelieved by the jury. He admitted to the police officer that, ''I just got crazy drunk and assaulted the woman.'' Because of the

nature of the charge, the trial court might well have allowed the question in dispute to be answered, but from an analysis of the record we are of the opinion that the court's ruling sustaining the objection thereto was not prejudicially erroneous and did not result in a miscarriage of justice.

Appellant next complains that the trial court erred in refusing to give certain instructions which he states he offered and which he claims under the authorities cited in his brief were pertinent, necessary and material to said cause. But he presents no argument nor does he set forth any of the instructions given by the court bearing upon the subjects covered by the refused instructions. In this respect he has failed to comply with section 3, rule VIII of the Rules for the Supreme Court and District Courts of Appeal, and we are justified in the belief that the instructions which were offered by appellant and refused were properly refused. (*People* v. *Jacobs,* 11 Cal. App. (2d) 1 [52 Pac. (2d) 945].)

One of the grounds set forth in defendant's motion for a new trial was newly discovered evidence. In support thereof he filed two affidavits, one made by his wife and one by one of his attorneys. He does not contend in his brief that the matters set forth in these affidavits, if placed before the jury, would render a different result probable, but that "a jury might have taken note of the situation and given greater credence to the case of the defendant in this respect." This, of course, does not meet the requirements of the law, for a new trial should not be granted on the ground of newly discovered evidence unless the showing is such as to render a different result probable. (*People* v. *Urquidas,* 96 Cal. 239 [31 Pac. 52]; *People* v. *Paysen,* 123 Cal. App. 396 [11 Pac. (2d) 431].) A reading of the affidavits fails to satisfy us that the evidence therein contained would have rendered a different result probable on a retrial of the cause. We therefore can see no abuse of discretion by the trial court in denying the motion. The "newly discovered evidence" suggested in the affidavits relates to a conversation had between defendant's wife and the prosecutrix the day following the affair of which the prosecutrix complained. The fact of the conversation was not disclosed to defendant's counsel until after the trial was over. The two participants agreed to keep their visit and conversation a secret. There is no affidavit of defendant denying his knowledge of the said conversation nor does the affidavit of the defendant's wife specifically deny that

she had told him about her meeting with the prosecutrix. The defendant must show by his own affidavit that he did not know of the evidence and could not by diligence have obtained it. (*Baker* v. *Joseph*, 16 Cal. 173; *Arnold* v. *Skaggs*, 35 Cal. 684; *People* v. *Brown*, 28 Cal. App. 261 [152 Pac. 58].)

■ We are referred by counsel to the transcript in order that remarks of the district attorney which counsel deems are prejudicial may be ascertained. This is a burden which this court will not assume. (*People* v. *Barnett*, 134 Cal. App. 381 [25 Pac. (2d) 476]; *People* v. *Pearson*, 11 Cal. App. (2d) 123 [52 Pac. (2d) 971].) ■ The instance where counsel has pointed out particular error involves an attempt on the part of the district attorney to convince the prospective jurors that he was not prosecuting an innocent man. The district attorney propounded the following question to a prospective juror: "Q. Now there has been a lot of talk here and discussion about the presumption of innocence in a criminal case and you have been asked repeatedly if you believed this man at the counsel table charged with crime is innocent at this moment and a number of these jurors have properly answered that they thought he was, under the presumption which the law has provided, but now I want here to know what you think about—if you have any idea on the subject of what you think the district attorney's duties are—do you believe while this man is presumed to be innocent it is my job as district attorney to come here and prosecute an innocent man?" Appellant's counsel objected to this question and his objection was sustained. This line of questioning should not have been indulged in and the court properly sustained the objection. It cannot be said, however, that counsel's conduct wrought prejudice. (*People* v. *Hanks*, 35 Cal. App. (2d) 290 [95 Pac. (2d) 478].)

There is an abundance of evidence to support the verdict in this case and we see no prejudicial errors in the record.

The judgment and orders appealed from are affirmed. The motion for diminution of the record is denied.

Barnard, P. J., and Griffin, J., concurred.