[Civ. No. 54648. First Dist., Div. Three. Aug. 5, 1982.]

EARL BILLY GIBSON et al., Petitioners, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

David Ross Mayer, Mayer, Zitrin & Zitrin, Doron Weinberg and Larson & Weinberg for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen and Stan M. Helfman, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**FEINBERG, J.**—Once again, a court is presented by one of those tensions, endemic in a free and democratic society, wherein the safety of

the court, those required to attend to the court, and the public present at a criminal trial, strains against the defendants' right to a fair public trial before an impartial jury.

On the basis of information disclosed to the trial court, but not to petitioners, the court determined that in the interest of courtroom safety, all persons, other than jurors, attending the *trial*, will be required to:

1. Pass through a metal detector at the entrance to the courtroom;

2. Present proof of identity;

3. Submit to a full body "pat" search; and

4. Be photographed by a uniformed officer.

It is fair to say that the range and degree of intrusiveness of these measures, though not unique,[1] are extraordinary.

Petitioners, forced to speculate about the nature of the information received by the court, contend that these security measures will prejudice their rights to a fair trial. They argue that due process was denied them by the secret security hearings.

In this opinion we shall not reach the significant constitutional issues surrounding the claims that petitioners will be denied a fair and public trial. We shall not purport to advise the trial court what security measures are appropriate for the information it has received. Instead, we reach only the question of whether procedural due process requirements were met by the trial court in approving the security measures proposed.

Petitioners Earl Billy Gibson and Lawrence Justice were charged in 1971 with murder of a San Quentin corrections officer (Pen. Code, § 187) and assault by a life prisoner upon another inmate (Pen. Code, § 4500). The weapon allegedly used in each attack was a prison-made knife. Petitioners were both convicted in 1973, but in December of 1980, after their convictions had been affirmed on appeal, the United States Court of Appeals for the Ninth Circuit granted writ of habeas

---

[1]See *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 847 [153 Cal.Rptr. 89, 2 A.L.R.3d 1135].

corpus and ordered their release unless granted a new trial. (See *Gibson v. Clanon* (9th Cir. 1980) 633 F.2d 851.)

Pretrial proceedings commenced in Marin County Superior Court on February 6, 1981. Extraordinary security measures, including use of a metal detector, begun at the initial hearing, were abandoned after both defendants were released from the custody of the California Department of Corrections. Petitioner Gibson has completed all outstanding prison sentences and is on bail on the instant charges. Petitioner Justice has an uncompleted federal term which he is serving in Marin County jail, by agreement with federal authorities.

On August 12, 1981, use of a metal detector for petitioners' courtroom was reinstituted. Petitioners objected to Judge Wilson, who informed them that the measure resulted from information received from the sheriff's department concerning an in-court anticipated August disturbance. Judge Wilson "informally" assured counsel that the threat was limited to August 1981, and that security apparatus would be removed and would not be used at trial without a hearing and without clear necessity.

Use of the metal detector continued through pretrial proceedings. When the matter was assigned to Judge Richard Breiner for trial, petitioners were informed that the sheriff's department intended to use a metal detector at the courtroom door, to pat-search and require proof of identification for persons entering the courtroom, and to position uniformed California Department of Corrections personnel outside and possibly inside the courtroom.

Petitioners filed written objections to the proposed security procedures and the matter was heard January 7, 1982, by Judge Breiner. No evidence was presented at the hearing. In an order filed four days later, the court overruled petitioners' objections, stating that: "As Court Security Officer, the Sheriff has represented to the court that the procedures he intends to employ are vital and necessary to protect the safety of jurors, witnesses, the defendants, the attorneys, and court personnel. I find that the security measures proposed by the Court Security Officer are reasonable and necessary and will not prejudice the rights of either defendant."

At a subsequent hearing, petitioners asked to be informed of the showing that supported the security measures. The court refused the re-

quest, but at the suggestion of the prosecution it agreed to submit to this court, under seal, information it had received from the court security officer. Judge Breiner also explained that he did not intend to have uniformed Department of Corrections personnel in the courtroom and he did not intend to have jurors pass through the metal detector.

This writ petition followed. We stayed the trial, reviewed the sealed information, obtained opposition briefing from the Attorney General, and then denied the petition. Petitioners sought hearing in the California Supreme Court. While the matter was pending in that court, the trial court conducted an *in camera* hearing and received additional confidential information. Based upon that information it ordered as an additional security measure that each person attending the trial be photographed by uniformed deputy sheriffs. Three days later, petitioners appeared in court to protest the additional security measures. The court confirmed its order and advised petitioners that a sealed transcript of its *in camera* hearing would be transmitted to the Supreme Court. After receipt of the additional transcript and a declaration from petitioners, the Supreme Court granted hearing and retransferred the matter to this court with directions to issue an alternative writ. We issued the alternative writ and heard oral argument.

■ Petitioners contend that the security measures adopted by the trial court (1) will necessarily prejudice the jury and the public against petitioners, depriving them of the right to a fair trial, and (2) will deter members of the public from attending trial, denying petitioners their right to a public trial and denying the public its right to attend the trial. They argue that the court erred in apparently relying upon information concerning the conduct of persons with no identifiable connection to petitioners and erred in failing to disclose to petitioners the nature of the information upon which it relied and to permit petitioners to challenge the sufficiency of the information.

Petitioners cite *People* v. *Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1], a case involving shackling a defendant, and argue that its principles should be extended to cover other extraordinary security measures such as those proposed here. In that case, the trial court denied a motion that the defendant be permitted to appear before the jury without wrist and ankle restraints. The Supreme Court reversed the defendant's conviction, concluding that before physical restraints could be imposed there must be "a showing of necessity on the record." The trial court had summarily denied the motion, im-

plying a general policy of shackling all inmate defendants accused of violent crimes rather than a case-by-case inquiry into the possibility that the defendant would be unruly or would attempt an escape. The *Duran* court explained the correct approach to a shackling question:

"In the interest of minimizing the likelihood of courtroom violence or other disruption the trial court is vested, upon a proper showing, with discretion to order the physical restraint most suitable for a particular defendant in view of the attendant circumstances. The showing of non-comforming behavior in support of the court's determination to impose physical restraints must appear as a matter of record and, except where the defendant engages in threatening or violent conduct in the presence of the jurors, must otherwise be made out of the jury's presence. The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion. In those instances when visible restraints must be imposed the court shall instruct the jury *sua sponte* that such restraints should have no bearing on the determination of the defendant's guilt. However, when the restraints are concealed from the jury's view, this instruction should not be given unless requested by defendant since it might invite initial attention to the restraints and thus create prejudice which would otherwise be avoided." (*Id.*, at pp. 291-292.)

No physical restraints will be placed upon petitioners in their trial. Instead, the court has ordered security measures directed toward members of the public who might attend the trial. Petitioners argue that this is not a material distinction because the security measures will influence the jury by suggesting to the jurors that these petitioners are dangerous and violent people and that only extraordinary security measures can ensure public safety. Petitioners note that here the security measures will not only reflect adversely upon petitioners, but also deprive members of the public of the right to attend the trial in anonymity. They argue that such infringements may be permitted only upon a showing of necessity on the record and a showing that the state's purpose cannot be achieved by less restrictive means.

The Attorney General tacitly accepts applicability of the principles of *Duran*, but argues that its requirement of a showing on the record was met by the trial court providing a sealed record of the information disclosed by the sheriff, and that the trial court provided petitioners with sufficient information to permit petitioners to argue against the imposi-

tion of security measures. Referring to the law related to protecting the identity of informants, the Attorney General contends that greater disclosure is not required because there is no suggestion that nondisclosure deprives petitioners of material witnesses on the issue of guilt or innocence.

Had a procedure similar to that used when there is a request to reveal the identity of a confidential informant been utilized below, we might have accepted the Attorney General's contentions. However, we believe that the trial court denied petitioners procedural due process when it failed to utilize procedures reasonably designed to provide petitioners with information about the security needs and a meaningful chance to object to the court's decision.

As to the requirements of procedural due process, the California Supreme Court explained in *People* v. *Ramirez* (1979) 25 Cal.3d 260, 268-269 [158 Cal.Rptr. 316, 599 P.2d 622]: "We therefore hold that the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. (See Van Alstyne, *Cracks in the New Property* (1977) ... 62 Cornell L.Rev. at p. 487.) This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity. Accordingly, it places front and center the issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests.

"In determining applicable due process safeguards, it must be remembered that 'due process is flexible and calls for such procedural protections as the particular situation demands.' (*Morrisey* v. *Brewer* (1972) ... 408 U.S. at p. 481 ....)

"....  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ..

"These cases disclose that the extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context. In some instances this balancing may counsel formal hearing procedures that include the rights of confrontation and cross-examination, as well as a limited right to an attorney. (See, e.g., *Morrissey* v. *Brewer, supra,* 408 U.S. 471; *In re*

*Bye* (1974) 12 Cal.3d 96 . . . . ) In others, due process may require only that the administrative agency comply with the statutory limitations on its authority. (See, e.g., *Cafeteria Workers* v. *McElroy* [1961] 367 U.S. 886 [6 L.Ed.2d 1230, 81 S.Ct. 1743].) More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (*Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 561 . . . .)"

In *Ramirez* the deprivatory governmental action was exclusion from a narcotics treatment program conducted by the California Rehabilitation center (CRC). The *Ramirez* court concluded that due process entitled the patient-inmate to a statement of the grounds for exclusion, access to nonconfidential information that the director considered in reaching his decision, notice and opportunity to respond before the responsible official, and a statement of the final decision and reasons therefor in writing. In light of the administrative burden and the subjective nature of the director's decision, the *Ramirez* court determined that a formal hearing with confrontation and cross-examination was not required.

Here, the deprivatory action is the creation of a courtroom environment which will distinguish petitioners' trial from those of other defendants and possibly deter some members of the public from attending. It is difficult to compare very dissimilar kinds of deprivatory actions. However, no direct comparison is required because the due process requirements must be tailored to the particular situation. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].)

We have reviewed the sealed records furnished by the trial court. In order to protect the confidentiality of the sources of the information, we will not refer to the content of the records. However, we will observe that in the first *in camera* hearing, the court merely received in evidence certain documents and heard testimony from a sheriff's depart-

ment employee concerning the information contained in the documents. At the second *in camera* hearing, a witness testified about information recently gathered. Except for one very general statement, no witness in either hearing explained why the specific security measures ordered were particularly suitable to the kind of threat perceived. No document gave an explanation.

In addition to the *in camera* proceedings, the trial court conducted hearings with all parties present to consider the security measures resulting from the *in camera* presentations. Petitioners were permitted to present counterarguments, and the court explained verbally and/or in writing something about the reasons for each decision. At the hearing challenging the first set of security measures, the court said that the order it had made spoke for itself, and added that "the Court has received some information from the court security officer, which in my opinion, justifies the security measures." The order to which the court referred stated that he was aware "of the tragic courthouse incident which occurred August 7, 1970; of the bombing of a courtroom in this building sometime thereafter; of the fact that, unlike the situation at the first trial in this action, no protective barrier exists between the counsel table and the spectator section of the courtroom; of the fact that neither defendant is shackled or physically restrained in any way; and of the fact that the Marin County Sheriff is the Court Security Officer." The order stated that the sheriff had represented to the court that the procedures "were vital and necessary to protect the safety of jurors, witnesses, the defendants, the attorneys, and court personnel." No further explanation was given.

At the open hearing challenging the photographing of the public, the court gave no explanation of its order for further security measures. The order itself stated: "Whereas, the Court has reasonable cause to believe that the within case, which involves the trial of persons for a crime allegedly committed within San Quentin Prison, presents a high degree of risk to the security and decorum of the Court, and [¶] Whereas, evidence presented to the Court on March 1, 1982, which evidence is contained in a transcript of testimony heretofore ordered sealed by the Court, indicates that the protection of the Court and participants in said trial cannot be assured without the identification and photographing of all spectators who enter the courtroom during the trial proceedings, and [¶] Whereas, the Court has determined and hereby finds that such identification procedures are reasonable and essential to conduct the trial of the within case in an orderly and safe manner," therefore the photographing would take place.

At no time did petitioners hear any testimony concerning the nature of the information received or the nature of the threat perceived. The trial court's verbal and written statements shed no light on those topics. While petitioners were permitted to argue against the security measures, they were unable to present focused arguments because they lacked any knowledge of the kind of threat the court was attempting to meet. The result is that the record to support the security measures is inadequate for our review. Although there is evidence of a serious threat to the security of the courtroom and participants in the trial, there is no testimony about why the particular security measures selected were required and why alternative measures were not feasible.[2]

We recognize the need for confidentiality and do not minimize its importance. However, because of concern for confidentiality the trial court departed from the principles and procedures of the adversary system. It was not required to take such a drastic step in order to protect confidential sources and information which needed to remain secret.

In our view, after announcing the extraordinary security measures and receiving a challenge from petitioners, the court should have conducted an open hearing at which the court security officer could have presented evidence about the security threat and the need for each of the extraordinary procedures proposed. If confidentiality prevented disclosure of the details of the information received or even details of the reasons for using particular security measures, he could have given general explanations, invoking the privilege for official information (Evid. Code, § 1040) as to any information needing protection. If warranted, the trial court could have conducted *in camera* proceedings to assess the validity of the claim of privilege and to evaluate the secret information.

At such an open hearing, petitioners would have been permitted to question the security officer about the procedures he had chosen, to suggest alternatives, and to generally provide input for the decisional process. For instance, hypothetically, if the threat was to petitioners themselves, petitioners might have offered to view the trial on closed circuit television. If told that the threat emanated from petitioners, they might have offered to be shackled themselves in the interest of having an open courtroom rather than one protected by extraordinary measures. If told the reasons for each security method, petitioners might have suggested to the court a viable alternative not considered by the

---

[2]For instance, a routine full-body pat-search after passing through a metal detector would seem to be a measure only of "last resort."

security officer or by the court itself. They might have presented examples of security seen in other courts or other counties, but unknown to the Marin authorities. In short, petitioners would have had a realistic opportunity to challenge the security measures proposed and to mitigate the potentially prejudicial effect of those measures upon their right to a fair, public trial. Instead, these draconian measures were imposed through ex parte proceedings with no reasonable opportunity to contest them. In the process, they might also have made a record more susceptible to review by the appellate courts.[3]

We emphasize again that we do not decide on this record whether the particular security measures chosen for trial are an appropriate response to the threat presented. They may well be so. We decide only that the trial court procedure did not provide petitioners with procedural due process. Thus, petitioners are entitled to have the issue considered anew in a proper hearing.[4]

Let peremptory writ of mandate[5] issue, directing the Marin County Superior Court to set aside its decisions rejecting petitioners' challenges to extraordinary security measures and to conduct new proceedings consistent with this opinion.

White, P. J., and Barry-Deal, J., concurred.

---

[3]See the record made in *People v. Remiro, supra*, 89 Cal.App.3d 809, 848, to justify the security arrangements instituted there.

[4]Obviously, we are *not* suggesting that there need be further *in camera* hearings regarding the confidentiality of the identity of the source or sources of the information upon which the trial court ordered the security measures involved. The trial court, having heard these matters *in camera* and determined a need for confidentiality, is under no duty to rehear those same matters and determine once again that need.

[5]Although we issue an alternative writ of prohibition, our disposition of this matter makes peremptory writ of mandate a more suitable vehicle.