[No. S026586. Dec. 21, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNIE MONROE WOODWARD, Defendant and Appellant.

## COUNSEL

Timothy J. Foley, under appointment by the Supreme Court, Cliff Gardner, under appointment by the Court of Appeal, Charles H. James, Public Defender, and William W. Veale, Deputy Public Defender, for Defendant and Appellant.

Steinhart & Falconer, James F. Brelsford, Roger R. Myers, Lori A. Shoemaker and Mary Paul Nash as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass and John H. Sugiyama, Assistant Attorneys General, Mark S. Howell, Aileen Bunney and Sharon Rosen Leib, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LUCAS, C. J.**—In this criminal trial, after all the witnesses had testified, all the evidence had been admitted, and the prosecutor's closing jury arguments had commenced, the trial court, without consulting defendant or his counsel, permitted the bailiff to lock the courtroom doors and post a sign that read, in part, "Trial in progress—Please do not enter." The sign remained posted and the doors locked for about 90 minutes while the prosecutor completed his closing argument. Courtroom spectators who were already present were not required to leave, and (as the sign indicated) additional spectators were permitted to enter the courtroom at designated recesses. As will appear, we conclude that the temporary "closure" did not violate defendant's fundamental constitutional right to a public trial. (See U.S. Const., amends. VI, XIV; Cal. Const., art. I, § 15; see also Pen. Code, § 686, subd. 1.) For convenience, and consistent with the usage adopted by the parties in their briefs, we use the term "temporary closure" throughout this opinion to describe the trial court's action in locking the courtroom doors and posting a "do not enter" sign. We stress, however, that the public was never *excluded* from the courtroom, which remained "open" to all previously seated spectators and any other members of the public who wished to enter during designated recess periods. Although the court erred in failing to notify defendant before closing the courtroom to additional spectators, that error was clearly harmless beyond a reasonable doubt. Accordingly, we conclude the Court of Appeal erred in reversing defendant's conviction.

### FACTS

Defendant Johnie Monroe Woodward was charged with murder, possessing a concealable weapon, grand theft, assault with a deadly weapon, and related enhancements. The jury found him guilty of second degree murder,

and guilty as charged on the remaining counts and enhancements. On appeal, defendant asserted, among other claims, that he was denied his constitutional right to a public trial. The Court of Appeal agreed and, accordingly, declined to reach the remaining appellate issues.

It is unnecessary to recite additional facts underlying defendant's various offenses. As relevant to the issue before us, the record shows as follows: On March 13, 1990, following the completion of the prosecutor's closing arguments, the trial was recessed briefly during the afternoon session. On returning from the recess, defense counsel observed a sign on the courtroom door which read: "Trial in progress—Please do not enter—Breaks 11:00-11:15, 12:00-1:30, 3:00-3:15. Direct questions to bailiff in rm. 221." The sign also contained an arrow pointing to room 221, which room served as the judge's chambers.

Defense counsel promptly moved for a mistrial, asserting denial of a public trial. The court denied the motion. The court first acknowledged that not only was the sign posted, but the courtroom doors were locked during a portion of the prosecutor's closing argument. According to the court, the courtroom was the situs of the probate department, where various counsel seeking ex parte orders were apt to cause "constant interruptions." The bailiff had placed the sign "sometime probably at lunch in order not to interrupt argument with the attorneys coming in and out." At defense counsel's request, the court agreed to take the sign down and unlock the courtroom doors, and the closing arguments continued.

The next day, the court stated for the record a further reason supporting the temporary closure of the courtroom to additional spectators, namely, that defendant's trial posed unusual security risks. According to the court, defendant was a "kickboxer" and had been classified both as a violent offender and an escape risk. Additionally, according to the court, defendant's alleged offenses involved drug transactions, and defendant had indicated to the bailiff that some persons in the courtroom might attempt to kill him. Because of the numbers of persons entering and exiting the courtroom during the morning session, the bailiff had asked the court for permission to close the doors and direct persons to room 221, where they could be more readily screened before admittance to the courtroom. Due to a shortage of personnel, only a single bailiff was available to secure the courtroom.

According to the court, the sign was posted around 1:35 p.m., and "during the entire afternoon session there were in fact people in the audience in the courtroom, and . . . people were not prevented from coming in and being spectators."

Defendant renewed his objection by moving for a new trial, supported by a declaration from an acquaintance alleging: (1) he and another person approached the courtroom around 1:45 p.m. on the day in question, with the intent to view defendant's trial and provide "support" for him; (2) they observed a sign on the courtroom door that prohibited entry; and (3) they consequently departed without observing the proceedings. The court, after reiterating its reasons for posting the sign, denied the new trial motion.

## DISCUSSION

As previously indicated, the Court of Appeal reversed the judgment of conviction, concluding that defendant was denied his state and federal constitutional rights to a public trial. (Because a defendant's state constitutional public trial right appears to be coextensive with the federal guarantee [see *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 525-526 (165 Cal.Rptr. 851, 612 P.2d 941)], further general references to the "public trial right" or "public trial guarantee" are intended to include both the state and federal constitutional provisions.)

The Court of Appeal reasoned that the public trial right applies to the closing argument stage of trial, that the temporary closure in this case infringed on that right, and that the infringement required reversal of defendant's conviction. The court relied on the principle that the accused is not required to prove prejudice in order to obtain relief for a denial of his public trial guarantee (see *Waller* v. *Georgia* (1984) 467 U.S. 39, 49-50 [81 L.Ed.2d 31, 40-41, 104 S.Ct. 2210]), and that, accordingly, denial thereof is deemed per se reversible error (see *Arizona* v. *Fulminante* (1991) __ U.S. __, __ [113 L.Ed.2d 302, 321, 111 S.Ct. 1246] (opn. of White, J.) [dictum]; *id.* at p. __ [113 L.Ed.2d at p. 331] [opn. of Rehnquist, C. J.] [dictum]); *People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at p. 527). As will appear, we agree with the Court of Appeal that the right to public trial encompasses the closing argument phase of the trial. But we also conclude that the closure of the courtroom doors to additional spectators during part of the prosecutor's arguments, being both temporary in duration and motivated by legitimate concerns to maintain security and prevent continuous interruptions of closing arguments, and not involving the exclusion of preexisting spectators, did not constitute a denial of defendant's public trial right.

We note preliminarily that we have no occasion in this case to consider any special obligations trial courts may owe to the press or news media arising under the First Amendment to the United States Constitution. Although various media organizations have joined to raise such issues in an amici curiae brief, nothing in the record suggests that any representative of

the press was barred from attending defendant's trial or was otherwise affected by the court's order temporarily closing the courtroom to additional spectators.

### 1. *Public trial right applies to closing arguments*

Every person charged with a criminal offense has a constitutional right to a public trial, that is, a trial which is open to the general public at all times. (See U.S. Const., amends. VI, XIV; Cal. Const., art. I, § 15; see also Pen. Code, § 686, subd. 1.) We discuss the nature and scope of the right, and limitations thereon, in greater detail below. ■ But initially it seems clear the public trial right extends to the closing argument phase of a criminal case. At least two California cases seem to have so assumed in dictum. (See *People* v. *Teitelbaum* (1958) 163 Cal.App.2d 184, 206-207 [329 P.2d 157]; *People* v. *Buck* (1941) 46 Cal.App.2d 558, 562 [116 P.2d 160]; see also *Herring* v. *New York* (1975) 422 U.S. 853, 858 [45 L.Ed.2d 593, 598, 95 S.Ct. 2550] [closing argument is "a basic element of the adversary factfinding process in a criminal trial"]; *State* v. *Pullen* (Me. 1970) 266 A.2d 222, 228 [public trial guarantee includes all phases of trial, including closing arguments]; *State* v. *Lawrence* (Iowa 1969) 167 N.W.2d 912, 915 [same]; see generally Annot., Exclusion of Public from State Criminal Trial in Order to Prevent Disturbance by Spectators or Defendant (1987) 55 A.L.R.4th 1170; Annot., Exclusion of Public During Criminal Trial (1956) 48 A.L.R.2d 1436.)

In *People* v. *Buck, supra,* 46 Cal.App.2d at page 562, the appellate court reviewed a trial court order closing the courtroom to additional spectators during the reading of *jury instructions.* The *Buck* court noted that the order was made, without objection by defendant, to serve the convenience of the court and the parties, with a view toward facilitating the jury instruction process by avoiding the disturbance and distraction caused by spectators entering and leaving the courtroom. *Buck* observed, however, that "the court instructed the jury before the argument of counsel and that *the doors of the courtroom were opened during the argument.*" (*Ibid.,* italics added.) The court explained that "The term 'public trial' is used in a relative sense and its meaning depends largely upon the circumstances of each particular case." The court concluded that defendant was not deprived of a fair, public trial by closing the courtroom during the reading of the jury instructions. (*Ibid.;* see *People* v. *Teitelbaum, supra,* 163 Cal.App.2d at pp. 206-207 [reading instructions to jury is part of trial to which public trial right applies].) We note that, in the present case, defendant expressly consented to closing the courtroom while the jury instructions were read, and he makes no claim of error in that regard in his appeal.

The general trend of the cases appears to be toward *expanding* application of the public trial right. (See *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501, 510-513 [78 L.Ed.2d 629, 638-640, 104 S.Ct. 819] [right to public voir dire examination]; *Waller v. Georgia, supra,* 467 U.S. at p. 48 [81 L.Ed.2d at pp. 39-40] [right to public pretrial suppression hearing]; *People v. Pompa-Ortiz, supra,* 27 Cal.3d at p. 526 [right to public preliminary examination].) The People have cited no contrary cases nor suggested any satisfactory reason for excepting closing arguments from the public trial guarantee. Contrary to the People's assumption, the fact that the *defendant's* presence is not required at closing arguments (Pen. Code, § 977) has little bearing on whether the defendant has a right to *public* attendance during those arguments. We conclude that he does.

### 2. *Defendant was not denied a public trial*

█ Assuming that the public trial guarantee applies to closing arguments, was it infringed by the temporary closure that occurred here? We conclude that, although the court erred in failing to notify defendant of the closure, defendant's basic public trial right was not violated.

█ As previously indicated, a public trial ordinarily is one "open to the general public at all times." (*People v. Byrnes* (1948) 84 Cal.App.2d 72, 73 [190 P.2d 290]; see *People v. Hartman* (1894) 103 Cal. 242, 245 [37 P. 153].) The Sixth Amendment public trial guarantee creates a "presumption of openness" that can be rebutted only by a showing that exclusion of the public was necessary to protect some "higher value," such as the defendant's right to a fair trial, or the government's interest in preserving the confidentiality of the proceedings. (See *Waller v. Georgia, supra,* 467 U.S. at pp. 44-45 [81 L.Ed.2d at pp. 37-38].) When such a "higher value" is advanced, the trial court must balance the competing interests and allow a form of exclusion no broader than needed to protect those interests. (*Ibid.*) Specific written findings are required to enable a reviewing court to determine the propriety of the exclusion. (*Id.* at p. 45 [81 L.Ed.2d at pp. 37-38]; cf. Pen. Code, § 686.2 [findings required before removing spectators for intimidating witness].)

In *Waller v. Georgia, supra,* the high court held that the public trial guarantee applied to a pretrial evidence suppression hearing. Because the trial court failed to require a sufficiently specific showing of the supposed need for barring the public from the hearing, the court ruled that the defendant would be entitled to a new suppression hearing and, if additional evidence was suppressed, a new trial could follow. (467 U.S. at pp. 48-50 [81 L.Ed.2d at pp. 39-41].) The court approved the general rule of several

lower federal court cases that a defendant "should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." (*Id.* at p. 49 [81 L.Ed.2d at p. 40], fn. omitted; see also *Arizona v. Fulminante, supra,* ___ U.S. ___ [113 L.Ed.2d 302, 331] (opn. of Rehnquist, C. J.) [observing that denial of a right such as the right to public trial is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself"].)

The decisions relied on by defendant to support his public trial claim deal with situations wherein the general public was entirely or substantially excluded from trial or pretrial proceedings. (See, e.g., *Waller* v. *Georgia, supra,* 467 U.S. at pp. 48-50 [81 L.Ed.2d at pp. 39-41] [exclusion from entire pretrial suppression hearing]; *People* v. *Byrnes, supra,* 84 Cal.App.2d at pp. 78-80 [entire trial]; *People* v. *Hartman, supra,* 103 Cal. at p. 245 [same].) In the present case, by contrast, only a portion of the trial was affected, existing spectators were allowed to remain in the courtroom, and any member of the public could enter the courtroom during specified recesses. Under these circumstances, we believe the foregoing authorities are inapposite.

At least one federal case has concluded that a brief, temporary closure of the courtroom to additional spectators during closing arguments should be deemed too trivial to amount to a denial of the public trial right. In *Snyder* v. *Coiner* (4th Cir. 1975) 510 F.2d 224, 230, a bailiff temporarily refused to allow persons to enter or exit the courtroom during closing arguments, in order to minimize distractions or disturbances. The federal court, rejecting the defendant's public trial claim, observed that the closure of the courtroom lasted only "a short time," did not restrict the defendant, his family, witnesses, or even the previously admitted courtroom spectators, and "was entirely too trivial to amount to a constitutional deprivation." (*Ibid.*; see also *U.S.* v. *Sherlock* (9th Cir. 1989) 865 F.2d 1069, 1076-1077 [applying less exacting "substantial reason" standard for determining propriety of partial exclusion of public from courtroom]; *Davis* v. *Reynolds* (10th Cir. 1989) 890 F.2d 1105, 1109-1110, and cases cited [same]; *Douglas* v. *Wainwright* (11th Cir. 1984) 739 F.2d 531 [same]; *United States* ex rel. *Lloyd* v. *Vincent* (2d Cir. 1975) 520 F.2d 1272, 1274-1275 [temporary exclusion of public did not "seriously deprive" defendant of his public trial right]; *State* v. *Shaw* (Tenn.Crim.App. Tenn. 1981) 619 S.W.2d 546, 548 [temporary closure of courtroom doors *during closing arguments* to avoid interruptions held not violative of public trial guarantee].)

 In the present case, the Court of Appeal assumed that defendant was denied a public trial when the trial court temporarily barred *new* spectators from attending the prosecutor's closing arguments. But it is

apparent to us that defendant had a public trial throughout the entire proceeding. As the trial court stated on the record, members of the public were present during the prosecutor's argument, and additional spectators were permitted to enter the courtroom during specified recesses. Unlike the situation in the public exclusion cases relied on by defendant, the courtroom was never cleared to remove all spectators for a significant period.

In addition, the court expressed substantial reasons justifying the temporary closure, namely, to maintain court security and orderly courtroom proceedings. Trial courts possess broad power to control their courtrooms and maintain order and security. (Code Civ. Proc., § 128, subd. (a)(1)-(5).) This power is commonly used to close the courtroom to prevent overcrowding, and reasonably would extend to postponing admittance of additional spectators during the presentation of arguments or instructions. (See *People* v. *Hartman, supra,* 103 Cal. at p. 245 [trial should be open to public "with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial"]; *People* v. *Buck, supra,* 46 Cal.App.2d at p. 562 [closure of courtroom to additional spectators to avoid interruptions during reading of jury instructions].)

■ "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . . [Citations.] [Fn.] [¶] In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury. [Citations.]" (*Waller* v. *Georgia, supra,* 467 U.S. at p. 46 [81 L.Ed.2d at p. 38] [quoting prior authorities; internal quotation marks omitted]; see also *In re Oliver* (1948) 333 U.S. 257, 269-271 [92 L.Ed. 682, 691-693, 68 S.Ct. 499] [listing similar factors]; *People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at p. 530 [same].) ■ In our view, temporary closure of the courtroom under the circumstances in this case does not implicate any of the foregoing factors.

We acknowledge that some cases cited by defendant have held mere partial or temporary exclusion of the public may violate the public trial guarantee (see, e.g., *Kleinbart* v. *United States* (D.C. 1978) 388 A.2d 878, 881-883), but none of these cases involved closures of the courtroom doors that encompassed only counsel's closing arguments and permitted existing spectators to remain. We think the de minimis rationale of *Snyder* v. *Coiner, supra,* 510 F.2d at page 230, is more pertinent to the circumstances in this case, in which the closure did not exclude preexisting spectators, did not

include any of the evidentiary phase of the trial and lasted only one and one-half hours. (The entire trial extended over a period of *one month*, and required 28 actual court hours to complete.)

In reaching its conclusion, the Court of Appeal stressed the fact that the courtroom was ordered closed to additional spectators without first notifying defendant thereof. Indeed, the People offer no explanation why closure occurred without first notifying defendant and his counsel and permitting them to participate in the decision and to offer less restrictive alternatives. As the Court of Appeal herein observed, had such notice been given, defendant would have had the opportunity to suggest that the sign's language be modified to permit entry subject to a security check, or to route persons through room 221, as apparently intended by the court's bailiff in this case.

But lack of notice does not establish denial of a public trial. Although we agree the trial court erred here, at most a procedural due process violation occurred. (See *Gibson* v. *Superior Court* (1982) 135 Cal.App.3d 774, 780 [185 Cal.Rptr. 741] ["the trial court denied petitioners procedural due process when it failed to utilize procedures reasonably designed to provide petitioners with information about the security needs and a meaningful chance to object to the court's decision"]; see also *United States* v. *Hernandez* (9th Cir. 1979) 608 F.2d 741, 748 and fn. 4 [better practice is to hold evidentiary hearing before excluding public from courtroom]; *United States ex rel. Lloyd* v. *Vincent, supra,* 520 F.2d 1272, 1275 [same]; *U.S.* v. *Sherlock, supra,* 865 F.2d at p. 1078; *Jones* v. *Henderson* (E.D.N.Y. 1988) 683 F.Supp. 917, 923-924 [court improperly failed to allow defendant to object to exclusion of public]; *Kleinbart* v. *United States, supra,* 388 A.2d at p. 883 [counsel must be informed of exclusion of public and permitted to oppose it].)

Thus, we conclude that although defendant was denied his due process right to prior notice of the closure of the courtroom, his public trial right was not thereby violated as well. For future cases, the better practice would be to announce to the parties and their counsel the court's tentative intention to close the courtroom to additional spectators, to explain the reasons therefor, and to permit them to object or offer suitable, less intrusive alternative measures.

3. *Failure to give defendant notice of closure was harmless error*

We next discuss whether or not the foregoing due process violation requires reversal of the judgment. Defendant points to decisions dispensing with the requirement of proving specific prejudice when a denial of the

public trial guarantee has been shown. (See *Waller* v. *Georgia, supra,* 467 U.S. at pp. 49-50 [81 L.Ed.2d at pp. 40-41] [ordering new suppression hearing]; *People* v. *Byrnes, supra,* 84 Cal.App.2d at pp. 78-80 [ordering new trial].) As previously indicated, however, we have concluded that defendant was not denied a public trial, and the sole error of procedure was the failure to give him prior notice of the temporary closure. Accordingly, we need not reach the question whether a reversible per se standard should apply to temporary denials of the public trial right. Instead, we must apply the prejudice test applicable to comparable denials of procedural due process.

■ In *Arizona* v. *Fulminante, supra,* __ U.S. __ [113 L.Ed.2d 302, 330-332 (opn. of Rehnquist, C. J.), a majority of the high court, in discussing the applicable harmless error standard for constitutional errors, distinguished "trial error," that is, an error which "occur[s] during the presentation of the case to the jury," from "structural defects," such as denial of a public trial, which "affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself." The former errors are subject to *Chapman* analysis (see *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065] [error or deprivation must be shown harmless beyond reasonable doubt]), whereas the latter errors are deemed reversible per se. (*Arizona* v. *Fulminante, supra,* U.S. at p. __ [113 L.Ed.2d at pp. 330-332].)

■ We believe that mere lack of notice of a temporary and partial courtroom closure of the nature involved here would be deemed a "trial error" subject to evaluation under *Chapman*. We likewise conclude beyond a reasonable doubt that the error had no effect whatever on the jury's verdict. Nothing in the record suggests that defendant's lack of notice of the closure prejudiced him in any way, or that proper notice would have influenced or affected the course of the trial. Accordingly, we conclude the failure to give defendant notice of the temporary closure to additional spectators was harmless beyond a reasonable doubt.

The judgment of the Court of Appeal is reversed, and the cause remanded to that court for resolution of the remaining appellate issues.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur. In general the analysis and result of the majority opinion are sound.

However, I cannot so readily accept the trial court's belated reliance on "court security" as an additional reason for the temporary closure.

· When defense counsel saw the closure sign he moved for a mistrial. The court denied the motion forthwith, but agreed to remove the sign immediately. Obviously "court security" was not the reason for the court's prompt action: it was a day later, manifestly as an afterthought in an effort to improve the record, that the court declared defendant's trial also posed security risks. If such risks were really a problem, one must wonder why the court ordered the sign removed.

I believe our opinion should have made it abundantly clear that even defendants who are security risks—not excluding those charged, as here, with murders and other acts of violence—have the constitutional right to a public trial. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15; see also Pen. Code, § 686, subd. 1.) There are ample methods of preventing potential disturbances in the courtroom without violating constitutional guaranties.

Nearly a century ago this court declared in *People* v. *Hartman* (1894) 103 Cal. 242, 245 [37 P. 153]: "The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, . . . with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial."

With the foregoing caveat, I join in the majority opinion.