[No. AO21778. First Dist., Div. Two. Oct. 21, 1983.]

ROBERT HENRY EVERSOLE, JR., Petitioner, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Counsel

Marteen J. Miller, Public Defender, and Steven C. Weiss, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Herbert F. Wilkinson, Deputy Attorneys General, for Real Party in Interest.

Opinion

KLINE, P. J.—

STATEMENT OF THE CASE

Petitioner Robert Henry Eversole, Jr. faces trial on three counts of rape (Pen. Code, § 261, subd. (2)), three counts of unlawful sexual intercourse (Pen. Code, § 261.5), one count of oral copulation (Pen. Code, § 288a, subd. (c)) and one count of false imprisonment (Pen. Code, § 236).[1] Several prior convictions are also alleged. Petitioner contends that his commitment was unlawful within the meaning of Penal Code section 995 on the grounds that the magistrate's closing of the preliminary hearing during the testimony of a 14-year-old victim of the alleged sexual assaults violated petitioner's right to a public preliminary examination. Specifically, he contends that there was an insufficient showing that "testimony before the general public would threaten serious psychological harm to the witness . . ." as required by section 868.7. After the superior court denied petitioner's 995 motion we issued the alternative writ to review this contention (see, e.g. *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941]; *Ortega v. Superior Court* (1982) 135 Cal.App.3d 244 [185 Cal.Rptr. 297]; and *In re Wagner* (1981) 119 Cal.App.3d 90, 107 [173 Cal.Rptr. 766]).

FACTS

At the commencement of the preliminary hearing, and over defense objection, the prosecution moved pursuant to Penal Code section 868.7 to close the preliminary hearing during the testimony of Laurie F. and Wendy M., alleged to be the two minor victims of the charged sex offenses. The prosecution contended that there existed a threat of serious psychological

---

[1] All subsequent references are to the Penal Code unless otherwise indicated.

harm to the victims should they be required to testify in open court at the preliminary hearing.

The court thereupon recessed the public portion of the preliminary hearing and held an *in camera* hearing to determine the condition of the victims.

During the *in camera* hearing Wendy M. testified upon examination by the district attorney that she was 16 years old and that she did not mind testifying at an examination open to the public, whereupon the court denied the 868.7 motion as to her. Wendy M. then testified in open court. Following her testimony the court again recessed the public proceedings and held an *in camera* hearing as to Laurie F. She testified that she was 14 years old and that she would prefer to have the examination closed. Asked how testifying in front of people in the courtroom would make her feel, she initially responded, "It would make me feel nervous and I don't think I could do it" but almost immediately retracted saying, "I could testify, but I would just, it would make me nervous." She said she would feel "weird" if, after testifying, she met people from Guerneville (the town where she lived) who had been present at the hearing. Asked whether she thought the possibility of later confronting people who had listened to her testify might make it more difficult to deal with "what's happened to you . . ." [the alleged rape], she replied "yes." She also testified that she "could face them" if no one were in the audience.

On cross-examination by the defense attorney Laurie stated she had not seen a psychiatrist or a psychologist and did not think that she had suffered such serious psychological damage that she need do so or that testifying in public would cause her serious psychological harm.

The court called Laurie's mother, who testified in pertinent part that Laurie had not told her in detail of the events of the attack, but only "bits and pieces." The mother stated she had not pressed Laurie to tell the entire story as Laurie was upset following the attack and for approximately five nights thereafter would talk and cry in her sleep, requiring her mother to waken her. Although Laurie had not been talking and crying in her sleep lately, immediately prior to the hearing she had complained of headaches and had not been sleeping well. Laurie's mother testified that when on the Friday prior to the hearing the district attorney asked Laurie detailed questions concerning the attack, "Laurie started crying, she started getting choked up. She lost her voice a couple of times." On those occasions when Laurie discussed the attack with her mother "she would get nervous and sometimes tears would come in her eyes."

The mother testified that she felt Laurie was a "very stable person." Asked whether she had an opinion as to how Laurie would react to testifying

in public the mother stated: "I know she could do it, but upon returning to Guerneville it would be difficult for her to face some of the people in Guerneville at this point. Possibly through her friends and family being strong—this would, you know, with her—this is probably about the only thing where she would be able to pull through." Laurie's mother also opined that the presence of the members of defendant's family in court would cause Laurie stress upon seeing them later in Guerneville.

On cross-examination she testified that the incident had been a "hot item" in the Guerneville newspapers since its occurrence in midsummer. She felt, however, that an open preliminary examination would additionally stress Laurie because prior to the examination people in Guerneville had only been speculating from newspaper accounts as to what actually took place whereas following the hearing they would know the details.

Laurie's mother testified that at that time she anticipated no need to consult a psychiatrist or psychologist on Laurie's behalf "because she has been holding up fairly well." The mother was, however, unable to respond when asked whether she felt serious psychological harm would result if Laurie's testimony at the hearing were public.

The court attempted to summarize the mother's testimony by asking, "[T]he gist of what you're saying, as I understood, was basically that if Laurie were to testify today at an open hearing as opposed to a closed hearing, as far as that portion involving her testimony, you feel she'd come under a lot of extra pressure from her peer group at home in the Guerneville area?" To this Laurie's mother responded "yes."

The court asked the district attorney why a subsequent trial would not be more of a shock for Laurie if the preliminary hearing were closed. The district attorney responded as follows: "Well, my feeling, both from what she's told us already on the stand and from my conversations with her, is a shock is having to tell it for the first time in front of strangers such as your Honor, the clerk and the court reporter, and getting use to a court where she's never been before and so forth. The way I treat this, the way I talk to her about the preliminary hearing, is that it would be in a sense a rehearsal, so it would be easier at the jury trial. And I think it is easier the second time around when she knows me and she knows she has to tell the story in front of strangers."

The court indicated that it was not persuaded by Laurie's statement that she would not suffer serious psychological harm from testifying in open court as the court doubted that a girl of Laurie's age would know what the word "psychological" or "serious" means.

The court then found that on the basis of the foregoing testimony as well as the court's own observation of the witness "that a case can be made to argue that 'serious psychological harm' would follow if she was forced to testify in public." The court relied upon Laurie's age, its own observations, Laurie's testimony as to her preference for a closed hearing, the testimony of Laurie and her mother that testifying in an open hearing could possibly cause more stress for Laurie "vis a vis stories published, possibly with graphic details in the local newspaper . . . ."

The record does not disclose that the court considered any alternatives to closure of that portion of the hearing at which Laurie would testify.

## I.

No case has yet construed Penal Code section 868.7. That section provides in pertinent part as follows: "[¶] (a) Notwithstanding any other provision of law, the magistrate may, upon motion of the prosecutor, close the examination in the manner described in section 868 during the testimony of a witness: [¶] (1) who is a minor and is the complaining victim of a sex offense, where testimony before the general public would threaten serious psychological harm to the witness and where no alternative procedures, including, but not limited to, videotaped deposition or contemporaneous examination in another place communicated to the courtroom by means of closed-circuit television are available to avoid the perceived harm.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(b) In any case where public access to the courtroom is restricted during the examination of a witness pursuant to this section, a transcript of the testimony of such witness shall be made available to the public as soon as is practicable."

Section 868.7, enacted in 1982, was one of several statutes included in chapter 83 of the Statutes of 1982 making major changes in procedures to be followed at preliminary examinations. (14 Pacific L.J. (1983) Review of Selected Cal. 1982 Legislation, p. 581.) Section 868, which previously required the closure of a preliminary hearing upon the request of the defendant, was amended at that time to provide that "the examination shall be open and public." However, the amendment also provides that upon the request of the defendant and a finding by the magistrate "that exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial, the magistrate shall exclude from the examination" all but a

few enumerated persons. (§ 868.)[2] ■ Considered together, sections 868 and 868.7 create three exceptions to the general rule that the preliminary examination shall be open and public. The first exception, set forth in section 868, permits the magistrate to close the entire hearing to the public when requested to do so by the *defendant* if the magistrate believes "that exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial." The second exception, which was utilized in this case and is set forth in section 868.7, subdivision (a)(1), permits the magistrate to close the hearing during the testimony of a minor victim of a sex offense when requested to do so by the *prosecution* if the magistrate believes that the making of such testimony public "would threaten serious psychological harm to the victim." Pursuant to section 868.7, subdivision (a)(2), the hearing may also be closed upon motion of the prosecution if the magistrate is persuaded that the life of a witness "would be subject to a substantial risk in appearing before the general public . . . ." However, a prosecution motion under section 868.7 may not be granted unless the magistrate also believes that alternative procedures are not available to avoid or minimize the perceived harm or threat.

Sections 868 and 868.7 were enacted in apparent response to two recent California Supreme Court cases regarding public access to preliminary hearings. (*People* v. *Pompa-Ortiz, supra,* 27 Cal.3d 519 and *San Jose Mercury-News* v. *Municipal Court* (1982) 30 Cal.3d 498 [179 Cal.Rptr. 772, 638 P.2d 655].)

In *People* v. *Pompa-Ortiz, supra,* the prosecutor moved to close the preliminary hearing without a statement of reasons. The court ordered the preliminary hearing closed over defense objection, noting that closure was in the interests of both the defendant and the victim. The Supreme Court held that defendant had an implied statutory right to a public preliminary hearing which he was denied. ■■■■ The court termed the right "sub-

---

[2]Penal Code section 868 provides in its entirety as follows: "The examination shall be open and public. However, upon the request of the defendant and a finding by the magistrate that exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial, the magistrate shall exclude from the examination every person except the clerk, court reporter and bailiff, the prosecutor and his or her counsel, the Attorney General, the district attorney of the county, the investigating officer, the officer having custody of a prisoner witness while the prisoner is testifying, the defendant and his or her counsel, the officer having the defendant in custody and a person chosen by the prosecuting witness who is not himself or herself a witness but who is present to provide the prosecuting witness moral support, provided that the person so chosen shall not discuss prior to or during the preliminary examination the testimony of the prosecuting witness with any person, other than the prosecuting witness, who is a witness in the examination. Nothing in this section shall affect the right to exclude witnesses as provided in Section 867 of the Penal Code. [¶] This section shall become operative on March 1, 1982."

stantial" and held that denial of such right entitled defendant to have the information set aside pursuant to section 995. (*Id.*, at p. 526.)[3]

■ The Supreme Court rejected defendant's contention that the right to an open preliminary hearing is compelled by the "public trial" language of the Sixth Amendment of the federal Constitution. Nor did the court base its requirement of a public preliminary hearing upon the California constitutional guarantee of a "speedy and public trial" found in article I, section 15. Relying instead upon "California tradition and common law, implicitly acknowledged by statute," the court held that a criminal defendant has a right to a public preliminary hearing. It also stressed, however, "that section 868 is an important exception to the state's history of open hearings." (*San Jose Mercury-News* v. *Municipal Court, supra,* 30 Cal.3d at p. 510, explaining *People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at pp. 524-526.)

In *San Jose Mercury-News* v. *Municipal Court, supra,* 30 Cal.3d 498, the most recent California Supreme Court case involving the propriety of a closed preliminary hearing, the Mercury-News sought a writ of mandate to compel a magistrate to vacate his order closing the hearing under former section 868 and to issue a new order opening the hearing to media and public. The Mercury-News challenged the order on the ground that section 868, which at that time required a closed hearing at defendant's request, was an unconstitutional infringement on the public's right to access. Holding that the provision of then section 868 requiring closure at the request of the defendant was constitutional, the Supreme Court rejected arguments that the federal and state constitutions grant the press and public a right of access to preliminary hearings that may be foreclosed only when outweighed by a defendant's interest in a fair trial. In effect, the court deferred to the legislative determination embodied in section 868 that a defendant's right to close the hearing, which is an aspect of his right to a fair trial, should have precedence over access in that class of proceedings in which the danger of prejudice is strong but often difficult to prove on a case-by-case basis. (*Id.*, at p. 514.)

■ The indication by the Supreme Court in *Mercury-News* that it would defer to legislative accommodation of the competing interests in free speech

---

[3]However, the court also held that defendant had failed to show prejudice as he was granted a public trial. The court thereupon enunciated the rule that "irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects." (*Id.*, at p. 529.)

and fair trial appears to have prompted the 1982 amendment of section 868 and concomitant enactment of section 868.7, which occurred almost immediately after issuance of the opinion in that case.[4] By its amendment to section 868 the Legislature essentially vitiated the holding of *Mercury-News* that public access rights were subordinate to a defendant's fair-trial rights. In effect, the 1982 legislation elevated public access rights to a par with those of fair-trial and directed that any conflict that might arise between these rights be resolved by balancing the competing considerations on a case-by-case basis.

*Mercury-News* remains significant for present purposes, however, because it provides the most comprehensive analysis by our Supreme Court of the competing values traditionally involved in the conflict between those who seek to open and those who seek to close all or a portion of a preliminary hearing. Due to the significance of many of these considerations for our disposition of the present case, we reiterate the Supreme Court's observations at length:

"Preliminary hearings are a critical step in the accusatory process. . . . Though they do not resemble the trial in all particulars, . . . there are many similarities. Witnesses may be cross-examined, credibility is crucial, and each side has an incentive to prevail. The hearing may reveal weaknesses in prosecution or defense evidence that forecast the ultimate disposition. [¶] Further, when exclusion of evidence is not at issue the preliminary hearing may turn out to be 'the only judicial proceeding of substantial importance that takes place during a criminal prosecution . . . .' It has been reported that in 1978 only 3.2 percent of all felony-arrest dispositions in this state involved trials. . . . [¶] The preliminary hearing often provides a forum for adjudication of issues involving police misconduct and exclusion of evidence. In many cases it may provide the sole occasion for public observation of the criminal justice system.

"On the other hand, the nature and timing of preliminary hearings do present dangers that public access may prejudice fair-trial rights. As with other pretrial proceedings, the climate they may generate in advance of trial cannot always be nullified by relatively simple controls, such as sequestration and exclusion of witnesses, that are available to counter inflammatory publicity at the time of trial. [¶] [Also,] . . . suppression-of-evidence issues often are heard during the preliminary hearing. For that reason and because magistrates may err in their evidentiary rulings a danger arises that preju-

---

[4]The amendment of section 868 and addition of section 868.7 were contemporaneously enacted through an urgency measure that became effective on March 1, 1982, less than two months after issuance of the decision in *Mercury-News* on January 15, 1982.

dicial information—inadmissible at trial—will be revealed to potential jurors. [¶] Yet inflammatory or misleading publicity is not the only unfair publicity. Factual, relevant reporting may be prejudicial too if it produces a jury pool within which a defendant's guilt has already been ascribed." (*San Jose Mercury-News* v. *Municipal Court, supra,* 30 Cal.3d at pp. 510-512, citations and fns. omitted.)

In *Mercury-News,* as in most of the recent cases involving the propriety of closed judicial proceedings (see, e.g., *Richmond ·Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814] and *Gannett Co.* v. *De Pasquale* (1979) 443 U.S. 368 [61 L.Ed.2d 608, 99 S.Ct. 2898]), constitutional rights to access were in conflict with constitutional guarantees of a fair trial. ■ ■■■ In the instant case, however, as in *People* v. *Pompa-Ortiz, supra,* 27 Cal.3d 519, it is the defendant who is asserting the public right of access and who in doing so contends that enforcement ·of the public right of access is not only consistent with but essential in order to vindicate his personal right to a fair trial.[5] In other words, those considerations enumerated in *Mercury-News* as in support of closure are not relevant in this case because there is here no assertion that press or public access will result in an unfair trial.

The novelty of the instant case lies in the fact that the newly enacted statute we are called upon to construe was designed, inter alia, to enhance a value not considered in *Mercury-News* nor in any otherwise pertinent California case: the value of protecting minor victims of sex crimes from the danger that their public testimony at a preliminary hearing may result in serious psychological harm. Although the ability of the state to protect such victims from this danger by curtailing access to a judicial proceeding has never before been addressed by an appellate court in this state, it has been considered by the United States Supreme Court.

■ In *Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613], a newspaper publisher sought admission to the courtroom during the trial of a defendant charged with the rape of three minor girls. The Massachusetts trial court ordered the exclusion of the press and public from the courtroom not at the request of any party but pursuant to a state statute requiring, under all circumstances, exclusion of

---

[5]We do not mean to indicate by this statement that the defendant has a Sixth Amendment or state constitutional *right* to an open preliminary hearing, as this argument has apparently been foreclosed by our Supreme Court's decision in *People* v. *Pompa-Ortiz. (People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at p. 522.) However, it is clear that the defendant's statutory right to an open preliminary hearing is closely aligned with certain values protected under the Fifth, Sixth, and Fourteenth Amendments, which together provide a criminally accused person with a right to a fair trial before an unbiased jury. (*San Jose Mercury-News, supra,* 30 Cal.3d at p. 502.)

the general public from trials of specified sexual offenses involving a victim under the age of 18. In reversing the decision of the Supreme Judicial Court of Massachusetts, which had upheld the statute (423 N.E.2d 773), the Supreme Court reiterated that the federal constitutional right of access to criminal trials is not absolute (see *Richmond Newspapers, Inc.* v. *Virginia, supra,* 448 U.S. at p. 581, fn. 18 [65 L.Ed.2d at pp. 992-993]), but the circumstances under which the public can be barred are limited. "[I]t must be shown that the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest [citations]." (*Globe Newspaper Co.* v. *Superior Court, supra,* 457 U.S. at p. 607 [73 L.Ed.2d at p. 257].) Agreeing that the state's interest in safeguarding the physical and psychological well-being of a minor is a compelling one, the high court held that "[a] trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim." (*Id.,* at p. 608, fn. omitted [73 L.Ed.2d at p. 258].)

Section 868.7, which permits rather than requires closure, contemplates the case-by-case determination authorized by the Supreme Court in *Globe Newspapers.* In apparent recognition of this authority, and presumably of the fact that we are here concerned with closure of a preliminary hearing rather than a trial, petitioner does not challenge the constitutionality of section 868.7. As earlier noted, he contends instead that there was an insufficient showing that serious psychological harm is threatened. We decline to address this contention because, even indulging its correctness for the sake of argument, closure was nonetheless improper for other reasons.[6]

---

[6]We do think it appropriate, however, to briefly comment on a related issue raised by the superior court at the hearing on petitioner's 995 motion. After denying the motion, the judge urged petitioner to file the instant writ "because . . . , I don't really know what they [i.e., the Legislature] mean by serious psychological damage."

We fully appreciate the difficulty that will be encountered by any trial or appellate court required to determine whether a minor victim of a sex offense would suffer the "threat of serious psychological harm" if required to testify at a preliminary hearing open to the public. However, we would be reluctant to provide the definition of this phrase the trial court understandably desires even if the circumstances of this case did not render it unnecessary to do so. Any ostensibly authoritative abstract definition of this phrase by an appellate court would in our view more likely complicate than simplify the idea that the Legislature sought to communicate by the words it selected. The words used in the statute either do not have any special legal or technical meanings that genuinely require explanation or, in the case of the word "psychological," does not admit of any further useful definition not open to serious debate among knowledgeable persons. (On the manner in which legal definitions sometimes obscure rather than illuminate their subject, see the concurring opinion of Justice Mosk in *People* v. *Brigham* (1979) 25 Cal.3d 283, 292-316 [157 Cal.Rptr. 905, 599 P.2d 100], in which he persuasively advances the view that no definition of "beyond a reasonable doubt" is better than the definition set forth in the standard jury instruction.) The phrase "threaten serious psychological harm" itself provides perhaps the clearest general standard to guide a magistrate at a preliminary hearing that can be devised. Judicial attempts to further clarify the standard should only occur over time in appropriate cases in which upon review it need be determined whether a finding that such a threat exists is supported by substantial evidence.

## II.

Ordinarily, there are two likely reasons a minor victim of a sex offense will be exposed to the threat of serious psychological harm if required to testify at a preliminary hearing. The first is the added stress that may be caused by requiring the minor to describe the intimate details of the incident in the presence of the general public, including, more particularly, the defendant's family and friends. The other most likely reason is the stress that may result from the knowledge that the intimate details of the event will be publicly disseminated.

■ The statute under consideration here seeks only to protect a minor victim from the threat of harm resulting from the added stress of testifying before the general public. It does not purport to protect the minor victim against psychological harm that may result from the making of his or her testimony public since section 868.7, subdivision (b), provides that even in the event of closure "a transcript of the testimony of the witness shall be made available to the public as soon as it is practicable."

Thus, for example, the stress that Laurie would allegedly suffer if required to testify in the presence of certain members of the defendant's family is precisely the type of psychological harm the Legislature sought to avoid (provided of course that such harm is adjudged "serious"). On the other hand, the stress the mother predicted would result to her daughter due to graphic press accounts and public knowledge of the details of the minor's testimony would not be avoided by closure because, as noted, closure of the hearing would not prevent the press and public from promptly obtaining a transcript of the testimony.

■ Moreover, and for present purposes more importantly, the requirement of section 868.7, subdivision (a)(1), that the magistrate find that testifying before the general public would threaten the minor witness with serious psychological harm is merely the first part of the dual determination that must precede the ultimate decision to close the preliminary hearing during the testimony of a minor victim.

Even if the magistrate is convinced testimony before the general public would threaten the minor witness with serious psychological harm, he or she must make the additional statutorily required determination that no alternative procedures are available to avoid the perceived harm. It is only after the magistrate has made both of the foregoing determinations that he or she may exclude the public from that portion of the hearing at which the minor testifies.

The importance the Legislature attached to the consideration of alternatives to closure is underscored by the specificity of the two non-exclusive alternatives described in the statute itself: 1) videotaped depositions; and 2) "contemporaneous examination in another place communicated to the courtroom by means of closed circuit-television. . . ." (§ 868.7, subd. (a)(1).)[7] Considering that video and closed circuit technology are more and more commonly being utilized in the courtroom,[8] the specific alternatives described in section 868.7, subdivision (a)(1), may be viewed as legislative recognition that current technology makes it inexpensively possible[9] to protect the interests of the minor witness without prejudice to otherwise competing rights of the accused, the press and the public.[10]

The alternatives expressly described in the statute, and perhaps others that may be devised by court or counsel,[11] provide methods for protecting the rights of all affected parties. Given the importance of such rights, the statutory requirement of the exhaustion of alternatives as a precondition of closure must be assiduously complied with.

The record indicates that the magistrate did not give even passing consideration to alternatives to closure.[12] In light of this error we conclude that

---

[7]See also section 868.7, subdivision (a)(2), which allows the magistrate to close the preliminary hearing during the testimony of a witness whose life would be subject to a substantial risk in appearing before the general public. In a manner similar to that provided for by section 868.7, subdivision (a)(1), subdivision (a)(2) also compels the magistrate to consider specified and other alternatives to closure.

[8]A fact that has been more than amply demonstrated by the recent literature, which is generally supportive of this technological development. (See, e.g., Kaufman, *Video in the Courtroom* (Oct. 1983) Cal. Lawyer, 41-43; Murray, *Videotaped Depositions: Putting Absent Witnesses in Court* (1982) 68 A.B.A. J. 1402; German, et al., *Videotape Evidence at Trial* (1982) 6 Am.J. of Trial Advoc. 209; Raburn, *Videotapes in Criminal Courts: Prosecutors on Camera* (1981) 17 Crim.L.Bull. 405; Raburn, *Prosecutors on Camera: Part II* (1981) 17 Crim.L.Bull. 591; Balabanian, *Medium v. Tedium: Video Depositions Come of Age* (1980) 7 Litigation 25; McCrystal & Maschari, *Will Electronic Technology Take the Witness Stand?* (1980) 11 U.Toledo L.Rev. 239; *Audio/Video Technology and the Courts* (Nat'l. Center for State Courts, pub. no. R0034, Nov. 1977).)

[9]On the relatively low cost of video equipment, see McCrystal, *Videotaped Trials: A Primer* (1978) 61 Judicature 250, 255; Kornblum, *Videotape in Civil Cases* (1972) 24 Hastings Law Journal 9, page 10, footnote 7.

[10]We recognize, however, that video technology presents potential for novel problems not heretofore considered by the Legislature or the courts. For example, the use by the broadcast media of the videotape of a televised deposition might exacerbate rather than diminish the threat of serious psychological harm to the victim witness. This problem can be avoided by appropriate court controls, since the media has the right only to obtain the transcript, not the videotape, of the witness' testimony. In any event, this problem and such others as the new statute may in the future present are best addressed if and when they materialize.

[11]For example, in the instant case the mother's testimony that Laurie would suffer psychological distress due to the presence in the courtroom of members of the defendant's family might warrant closure only as to the specified family members.

[12]In fact, the parties conceded at oral argument that facilities for videotaping testimony were available at the time of the preliminary hearing. However, there is nothing in the record to indicate that use of these facilities was considered by the magistrate.

the superior court abused its discretion in failing to grant petitioner's 995 motion.

Let the writ issue commanding respondent superior court to take no further action in this case other than to dismiss.

Miller, J., and Smith, J., concurred.