[No. C051402. Third Dist. Sept. 15, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DON BALDWIN, Defendant and Appellant.

**COUNSEL**

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Janis Shank McLean and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—In this case we hold the trial court violated defendant's Sixth Amendment right to a public trial when it closed the courtroom to all spectators during the testimony of a 14-year-old molestation victim based only on the prosecutor's assertion the victim would have difficulty testifying. Finding the error structural, we will reverse defendant's convictions and remand the case for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant Gary Don Baldwin with 15 counts of sexually molesting his girlfriend's daughter D.W. from the time she was nine until she was 12 years old and two counts of physically abusing his own children. The People further alleged he had been convicted of a serious felony that also qualified as a strike. Defendant contested the charges and allegations in a bifurcated trial.

Out of the jury's presence and before any witnesses had been called, the prosecutor requested the courtroom be closed to spectators during D.W.'s testimony, resulting in the following colloquy between the parties and the court:

"[THE PROSECUTOR]: [T]he People's first witness is a minor and she's the named victim of all of the sexual offenses in this case, [D.W.]. I'm making a motion under Penal Code Section 868.7 that during her testimony the courtroom be closed due to the nature of her testimony in this case.

"THE COURT: Any objection from the defense?

"[DEFENSE COUNSEL]: Yes. I object. I believe it's—Mr. Baldwin is entitled to an open courtroom of the public. Aside from that, there's also people [who] may be watching because they want to watch this trial [who] are actually attorneys or interns in the public defender's office, so that's not a public—I mean, I would make a distinction on that as well. [¶] . . . [¶]

"[THE PROSECUTOR]: I can tell you, your Honor, that it's going to be difficult for this child to testify given the number of people who need to be here regardless, and any additional members of the public who are sitting in the audience just for purposes of curiosity, I don't think that's a good enough reason. And the Penal Code does provide that during these types of cases with this type of testimony that the courtroom may be closed due to the nature of the child's testimony.

"THE COURT: The People's motion is granted. *The law is clear that when a child under the age, I believe, of 16 is testifying about such matters, the courtroom may be closed upon their request.*" (Italics added.)

After the parties delivered their opening statements, the court announced that "[p]ursuant to Penal Code Section 868.7, the courtroom is hereby designated closed except for the jurors, counsel, the defendant and courtroom staff."

The People then called D.W. as their first witness. She was 14 years old at the time of trial and had moved to Sacramento when she was nine to live with her mother and defendant.

On several different occasions, defendant touched D.W. "in the wrong spots" and made her do "wrong things." He would come into the bathroom while she was showering and would touch her "boobs" and her "private part." On other occasions, defendant would take D.W. into a trailer, order her to undress, and touch her "private part" with his "private part." He told her if she refused, he would "break off [her] arm." He would also "tr[y] to put his thing in [her] butt" with the aid of Vaseline.

Sometimes defendant would call D.W. into the master bathroom and ask for help because she "missed a spot" cleaning the bathroom. He would close the bathroom door and order her to "do that thing you did for me the other day." When D.W. refused, defendant would pull down his underwear and tell her she had to "suck on his private like a lollipop."

After one of these incidents, D.W.'s sister saw her crying and questioned her. D.W. eventually told her sister the "entire truth about what was happening." D.W.'s sister then urged her to tell her father and the police.

After this testimony, the courtroom was presumably opened to spectators, and the remaining 15 witnesses testified.

Thereafter, the jury found defendant guilty of 15 counts of sexually molesting D.W., one count of felony child abuse, and one count of misdemeanor child abuse. The court found true allegations defendant had a prior serious felony conviction that also qualified as a strike and sentenced him to an aggregate term of 270 years eight months to life in prison.

Defendant filed a timely notice of appeal, and on appeal he contends the trial court violated his constitutional right to a public trial when it closed the courtroom to spectators during D.W.'s testimony. As will be explained, we agree with defendant's contention.

## DISCUSSION

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a "public trial." " 'It is for the protection of all persons accused of a crime—the innocently accused, that they may not become the victim of an unjust prosecution, as well as the guilty, that they may be awarded a fair trial . . . .' " (*In re Oliver* (1948) 333 U.S. 257, 270, fn. 25 [92 L.Ed. 682, 692, fn. 25, 68 S.Ct. 499].) There is also "a strong societal interest in public trials." (*Gannett Co. v. DePasquale* (1979) 443 U.S. 368, 383 [61 L.Ed.2d 608, 623, 99 S.Ct. 2898].) They provide an opportunity for spectators to observe the judicial system, improve the quality of testimony, encourage unknown witnesses to come forward with relevant testimony, and prompt judges, lawyers, witnesses, and jurors to perform their duties more conscientiously. (*Ibid.*)

Given the importance of public trials to both the accused and the public, there is a " 'presumption of openness' " in the courtroom that " 'may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " (*Waller v. Georgia* (1984) 467 U.S. 39, 45 [81 L.Ed.2d 31, 38, 104 S.Ct. 2210] (*Waller*).) To that end, the Supreme Court has identified four requirements that must be satisfied before public access to a criminal proceeding may be denied: (1) there must be "an overriding interest that is likely to be prejudiced" if the proceeding is left open;[1] (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) the trial court must articulate the interest being protected and make specific findings sufficient for a reviewing court to determine whether closure was proper. (*Id.* at pp. 45, 48 [81 L.Ed.2d at pp. 38–39]; see *People v. Woodward* (1992) 4 Cal.4th 376, 383 [14 Cal.Rptr.2d 434, 841 P.2d 954] [requiring "[s]pecific written findings"].) Here, defendant contends the trial court failed to satisfy these requirements before closing the courtroom. We agree.

With respect to the first requirement, as defendant acknowledges there are certain circumstances in which "the protection of minor victims of sex crimes from further trauma and embarrassment" is a compelling interest deserving of protection. (*Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 607 [73 L.Ed.2d 248, 257, 102 S.Ct. 2613].) Here, however, the only information before the trial court at the time of the closure motion was the charges against

---

[1] Courts have applied a less stringent "substantial reason" test to determine whether a defendant's right to a public trial was violated by a partial closure of the proceedings. (*U.S. v. Sherlock* (9th Cir. 1989) 962 F.2d 1349, 1357; *Woods v. Kuhlmann* (2nd Cir. 1992) 977 F.2d 74, 76; *Nieto v. Sullivan* (10th Cir. 1989) 879 F.2d 743, 753; *Douglas v. Wainwright* (11th Cir. 1984) 739 F.2d 531, 533.)

defendant and the prosecutor's representation that D.W. was going to have difficulty testifying. Without questioning D.W. and observing her firsthand, the trial court was in a poor position to evaluate whether D.W. needed the court's protection during her testimony. (See, e.g., *Guzman v. Scully* (2d Cir. 1996) 80 F.3d 772, 775 [decision to close the courtroom was based solely upon representations made by the prosecutor, and the court did not ask the witness whether he felt intimidated or whether his fear was sufficiently well founded to constitute an "overriding interest" or at least a "substantial reason"].)

Although there is no requirement the trial court hold an evidentiary hearing before closing proceedings, several courts have recognized this as "the better course" (*United States v. Hernandez* (9th Cir. 1979) 608 F.2d 741, 748; *United States ex rel. Latimore v. Sielaff* (7th Cir. 1977) 561 F.2d 691, 696; *United States ex rel. Lloyd v. Vincent* (2d Cir. 1975) 520 F.2d 1272, 1275), and the failure to hold a hearing "is relevant to the lawfulness of any closure" (*Guzman v. Scully, supra,* 80 F.3d at p. 775). As is the case here, the record fails to establish an overriding interest or a substantial reason warranting closure where "the trial court relied on the unsubstantiated statements of the prosecutor, rather than conducting an inquiry of the prosecution witness on whose behalf the closure request was made." (*Ibid.*)

Even if we accept that the prosecutor's representation sufficiently established an interest deserving protection, that interest did not necessarily warrant excluding the public from the courtroom. The trial court was still required to meet the second requirement enunciated in *Waller* and "balance the competing interests and allow a form of exclusion no broader than needed to protect those interests." (*People v. Woodward, supra,* 4 Cal.4th at p. 383, citing *Waller, supra,* 467 U.S. at pp. 44–45 [81 L.Ed.2d at pp. 37–38].) As we have discussed, these interests included defendant's right to a fair trial and the public's right to be assured the trial proceedings remained open to scrutiny. Here, the record belies any argument the court engaged in this balancing process. The court simply stated it was closing the courtroom pursuant to Penal Code[2] section 868.7 because the law "clear[ly]" allowed the courtroom to be closed when a child under the age of 16 is "testifying about such matters."

■ Not only did the court fail to recognize and balance the competing interests at stake, it also misunderstood the law. While section 868.7 does allow a trial court to restrict public access to the courtroom, it applies only to preliminary hearings and requires a showing similar to that enunciated in

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

*Waller.*[3] (§ 868.7, subd. (a); *Eversole v. Superior Court* (1983) 148 Cal.App.3d 188, 194 [195 Cal.Rptr. 816].) The proceeding here was not a preliminary hearing, and the court made none of the findings required by section 868.7.

■ Moreover, although there is statute that permits a trial court to close the courtroom in a sex offense trial during the testimony of a minor under age 16 to "protect the minor's . . . reputation" (§ 859.1, subd. (a)), that statute also did not apply. The prosecutor did not contend D.W.'s reputation needed protection, and the court made none of the findings required by section 859.1.[4] On this record, we cannot say the court balanced the competing interests and fashioned an order narrowly tailored to infringe on the competing interests as little as possible. (*Waller, supra,* 467 U.S. at p. 45 [81 L.Ed.2d at p. 38].)

There is also no indication the trial court attempted to meet the third requirement for closing the courtroom—considering reasonable alternatives to closure. (*Waller, supra,* 467 U.S. at p. 48 [81 L.Ed.2d at p. 39].) The People contend we must presume the court considered alternatives and, in any event, argue the court "was not in the best position to suggest alternatives that might be amenable to [defendant] and his counsel." The People's position is not supported by the law. In *Waller,* the Supreme Court noted that "*post hoc* assertion[s]" the trial court considered the factors justifying closure "cannot satisfy the deficiencies in the trial court's record." (*Waller, supra,* 467 U.S. at p. 49, fn. 8 [81 L.Ed.2d at p. 40, fn. 8].) Moreover, "the trial court *must* consider reasonable alternatives to closing the proceeding" (*id.* at p. 48 [81 L.Ed.2d at p. 39], italics added) whether defendant proposes such alternatives. Here, the record shows the court did not consider any alternatives to closing the courtroom.

---

[3] The showing required to close a preliminary hearing to the public under section 868.7 is as follows: (1) the witness is a minor or has a "substantial cognitive impairment," is the "complaining victim of a sex offense," would incur "serious psychological harm" from testifying before the general public, and "no alternative procedures . . . are available to avoid the perceived harm"; or (2) the witness's "life would be subject to a substantial risk in appearing before the general public," and "no alternative security measures . . . would be adequate to minimize the perceived threat." (§ 868.7, subd. (a)(1)–(2).)

[4] Before closing the courtroom pursuant to section 859.1, the court must "conduct a hearing" and "consider all of the following: [¶] (1) The nature and seriousness of the offense. [¶] (2) The age of the minor, or the level of cognitive development of the dependent person. [¶] (3) The extent to which the size of the community would preclude the anonymity of the victim. [¶] (4) The likelihood of public opprobrium due to the status of the victim. [¶] (5) Whether there is an overriding public interest in having an open hearing. [¶] (6) Whether the prosecution has demonstrated a substantial probability that the identity of the witness would otherwise be disclosed to the public during that proceeding, and demonstrated a substantial probability that the disclosure of his or her identity would cause serious harm to the witness. [¶] (7) Whether the witness has disclosed information concerning the case to the public through press conferences, public meetings, or other means. [¶] (8) Other factors the court may deem necessary to protect the interests of justice." (§ 859.1, subds. (a), (b).)

Finally, the trial court's conclusory justification for excluding all spectators from the courtroom during D.W.'s testimony failed to satisfy the fourth requirement of findings adequate to support the closure. (*Waller, supra,* 467 U.S. at 48 [L.Ed.2d at p. 40] ["broad and general" findings insufficient]; see *People v. Woodward, supra,* 4 Cal.4th at p. 383 [requiring "[s]pecific written findings"].) As we have explained, the court's finding was not specific as to the overriding or substantial interest at stake, so the court did not balance the competing interests, fashion a narrow exclusion order to infringe on the competing interests as little as possible, or consider alternatives to closure.

■ Under these circumstances, the trial court's closure of the courtroom during D.W.'s testimony violated defendant's Sixth Amendment right to a public trial. Exclusion of spectators from the courtroom "is not a step to be taken lightly" (*Guzman v. Scully, supra,* 80 F.3d at p. 776), especially where the trial court closes the courtroom during a critical portion of the trial. (Compare *Davis v. Reynolds* (10th Cir. 1989) 890 F.2d 1105, 1108, 1112 [closing courtroom to all spectators during molestation victim's trial testimony based solely on the prosecutor's representation the victim had suffered " 'some emotional and psychological trauma' " violated defendant's right to a public trial] with *People v. Woodward, supra,* 4 Cal.4th at pp. 385–386 [closing courtroom to additional spectators during closing arguments was "de minimus"].) Here, D.W. was the prosecution's central witness, her testimony formed the basis for 15 of the 17 charges against defendant, all spectators were excluded from the courtroom, and the trial court failed to satisfy any of the requirements enunciated in *Waller.*

■ As is the case here, when a defendant has been deprived of his constitutional right to a public trial, the error is structural. (*Waller, supra,* 467 U.S. at pp. 49–50 [81 L.Ed.2d at p. 40]; *Guzman v. Scully, supra,* 80 F.3d at p. 776.) No showing of prejudice is required "[b]ecause the right to a public trial protects the defendant from very subtle but very real injustices," and "[r]equiring such a defendant to prove actual prejudice would deprive most defendants of the right to a public trial." (*Davis v. Reynolds, supra,* 890 F.2d at p. 1111.)

Accordingly, defendant is entitled to reversal of his convictions and remand for a new trial. Because we reverse defendant's convictions on this ground, we decline to consider whether defendant's remaining contentions on appeal also warrant reversal.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court for a new trial.

Raye, Acting P. J., and Cantil-Sakauye, J., concurred.