[Civ. No. 6574. First Appellate District, Division Two.—February 11, 1929.]

W. J. SCHELLING, Plaintiff and Respondent, v. REX-FORD THOMAS et al., Defendants; L. J. CONLEY, Defendant and Appellant; E. N. TOOBY, Defendant and Respondent.

J. Logan Beamer and Henry L. Ford for Defendant and Appellant.

Mahan & Mahan for Plaintiff and Respondent.

Nelson & Ricks for Defendant and Respondent.

LUCAS, J., *pro tem.*—This is an appeal taken by defendant and cross-complainant L. J. Conley from a judgment and decree of foreclosure and sale in favor of plaintiff and respondent W. J. Schelling and defendant and cross-complainant E. N. Tooby.

The facts are that on September 22, 1922, respondent Schelling signed, as an accommodation maker, a $1,000 promissory note with defendant Rexford Thomas, thereby enabling the latter to borrow $1,000 from the First National Bank of Eureka. On the same date Rexford Thomas executed and delivered to respondent the following instrument:

"I hereby agree to turn over all my property, namely one timber claim No. 816,932 and my lot and two buildings at McKee's mill to W. J. Schelling until such time he is released from my note, held by the First National Bank of Eureka. I also agree to pay him eight percent int. of principal on note.

"REXFORD THOMAS."

At the time the agreement was executed Thomas stated it was given as security on his property for the respondent's liability under the said $1,000 note.

Subsequently and on April 27, 1923, Thomas wrote upon this agreement the words: "This agreement is to hold good for $1,000 and interest," signed his name thereto and acknowledged the instrument before a notary public. It was placed on record in the county recorder's office on the same day at fifty-nine minutes past 10 A. M.

On September 22, 1922, at the time said writing was executed, the said Thomas held a patent to timber claim No. 816,932 and was occupying and in possession of a lot and two buildings at McKee's mill, but was not yet the owner of the lot.

Schelling testified that the thousand dollars borrowed from the bank as above stated was used by Thomas in the construction of the said buildings on the McKee's mill lot. Subsequent to the construction of the buildings and by deed dated December 28, 1922, acknowledged January 4, 1923, and recorded April 25, 1923, Norine McKee and Ernest M. McKee, her husband, deeded to Thomas the lot above referred to.

On January 15, 1923, Thomas negotiated a loan of $2,000 from appellant L. J. Conley, and as security therefor gave Conley a trust deed to the property involved herein, which trust deed was signed by Thomas and by "Clara Thomas, his wife." The trust deed was recorded on April 27, 1923, at forty-seven minutes past 1 P. M. Conley testified that the $2,000 was used by Thomas in purchasing the McKee lot.

On April 24, 1923, to secure a further loan of $600, Thomas and "Clara Thomas, his wife," executed a mortgage on the same premises to Homer B. Douglas and Annie M. Douglas. The mortgage was recorded April 25, 1923. In consideration of the sum of $600 this mortgage was assigned by the Douglases to defendant E. N. Tooby on October 3, 1923. The assignment was recorded October 10, 1923.

No part of the principal of any of the foregoing notes was ever paid.

It was stipulated at the trial that at the time Douglas and wife assigned their mortgage to Tooby, the latter knew of the existence of the Conley deed of trust.

On April 25, 1924, the Conley deed of trust was foreclosed and Conley received a trustee's deed to the premises. The rights of Schelling and Tooby being undetermined, the said Schelling, on June 11, 1925, brought the present action to have the writing of September 22, 1922, herein first above referred to, declared to be a mortgage on the timber claim mentioned therein and upon the said McKee's mill lot, prayed judgment for the sum of $1,000 and interest alleged to be secured thereby, and asked that the property be sold in payment of the moneys due thereunder.

Both Conley and Tooby, being made defendants, filed answers and cross-complaints setting out their respective claims of interest in the property.

In its judgment the trial court found that Tooby had a first lien on the property arising out of the assigned Douglas mortgage; that the writing of September 22, 1922, was in fact a mortgage creating a second lien thereon, and that the interest of Conley created by his trustee's deed was subject to said two prior liens. Sale was decreed and the proceeds thereof ordered applied in accordance with the above findings.

Appellant Conley urges as grounds for reversal:

1. That the writing of September 22, 1922, did not create a valid mortgage on the premises involved in this action;

2. That since respondent Tooby took the assignment of mortgage from Douglas and wife with knowledge of the existence of the Conley deed of trust, the Tooby lien is subject to said deed of trust; and

3. Errors of law occurring at the trial.

These errors, it is contended, consist in the court overruling appellant's demurrer. The demurrer should have been sustained, it is urged, because the instrument relied upon by plaintiff as a mortgage is void, having been executed by Rexford Thomas alone, while the complaint alleges that Rexford Thomas and Clara Thomas are husband and wife; and because the said instrument is not effective as an equitable mortgage for the reason that it fails to show a consideration; and, further, because it cannot be enforced against an innocent third party.

In briefing the case counsel entered into a controversy as to whether the said Rexford Thomas was in fact a married man. The complaint is silent on the subject other than by reference made in the title of the cause, "W. J. Schelling, Plaintiff, *v.* Rexford Thomas, Clara Thomas, *his wife*," etc., and the allegation that *said* defendant Clara Thomas has or claims to have some interest in the mortgaged premises. In his answer and cross-complaint defendant Tooby sets up his claim of interest by virtue of a mortgage executed and delivered by "Rex Thomas and Clara Thomas *his wife*," etc., and the answer and cross-complaint of defendant and appellant Conley contains similar language. No proof of the marriage of Rexford Thomas being made at the trial below, appellant has moved this court for a "diminution of the record" by having inserted in the transcript a certified copy of the marriage certificate of Rexford Murray Thomas and Clara Etta Hunter showing their marriage on September 1, 1922.

Such a motion will not lie. A suggestion of diminution of the record is only for the purpose of correcting an error or defect in the transcript. Even considering the motion as an application under the provisions of section 956a of the Code of Civil Procedure for permission to introduce additional evidence, such application would have to be refused on the ground that no community property issue was raised by the pleadings nor at the time of trial, and on the further ground that the evidence sought to be adduced is immaterial. The offer is made for the purpose of attempting to prove that the McKee's mill lot was the community property of Rexford Thomas and wife. This is unimportant. If separate property, Thomas could deal with it alone—if community property, the alleged mortgage of September 22,

1922, is not, as contended by appellant, void by reason of the failure of Thomas' wife to join therein. ▮ The provisions of section 172a of the Civil Code as it existed in 1922, providing that the wife must join with the husband in executing any instrument by which community property is sold or encumbered, has been held to make the instrument not void but voidable, and this only at the instance of the wife. (*Goodrich* v. *Turney*, 44 Cal. App. 516, 519 [186 Pac. 806]; *Rice* v. *McCarthy*, 73 Cal. App. 655, 664 [239 Pac. 56].) ▮ In this case the wife of Rexford Thomas (if it be conceded that she was such) was made a party to the action and defaulted, thereby waiving her right, if any she had, to contest the validity of the transfer. This being a personal right, no one else can claim the benefits of the section by seeking to enforce such rights for her.

▮ Coming now to the other points raised by appellant, the court is of the opinion that the writing of September 22, 1922, was an equitable mortgage.

"Every express agreement in writing, whereby the party clearly indicates an intention to make some particular property therein described a security for a debt, creates an equitable lien upon the property, which is enforceable. The form of the writing is not important, provided it sufficiently appears that it was thereby intended to create a security. If that intention appears, it will create a mortgage in equity, or a specific lien on the property so intended to be mortgaged." (*Higgins* v. *Manson*, 126 Cal. 467, 469 [77 Am. St. Rep. 192, 58 Pac. 907, 908]; *Title Ins. & Trust Co.* v. *California Development Co.*, 171 Cal. 173 [152 Pac. 542].)

"An equitable lien upon real property is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice, actual or constructive. Upon recording an instrument creating an equitable mortgage or lien, the lien becomes a matter of record, and notice is thus given to all the world that the title is encumbered, so that any one subsequently dealing with the property would deal with it subject to the lien." (17 Cal. Jur. 734, 735.)

The instrument in question clearly indicates the intention of the parties to make the property mentioned therein security for a debt and the property is described with sufficient

particularity. The execution of the instrument was in good faith, for a valuable consideration, as shown upon the face of the writing, and the money secured thereby went into a portion of the property thereby encumbered. It was executed prior to the execution of the Conley trust deed and was recorded prior to the recordation of said trust deed.

Contrary to the last of appellant's contentions in attacking the validity of the instrument, the fact that the record title to the McKee's mill lot was not in Thomas at the time the instrument was executed is immaterial in the light of section 2930 of the Civil Code, which provides that:

"Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

The remaining point for consideration, namely, that since defendant Tooby took the assignment of the Douglas mortgage with knowledge of the existence of the Conley deed of trust it is subject thereto, the court believes to be without merit.

Appellant relies upon the provisions of section 1217 of the Civil Code, namely, that an unrecorded instrument is valid as between the parties thereto and those who have notice thereof, and cites certain supporting authorities. These authorities, however, are readily distinguishable from the case at bar, in that in each instance the subsequent conveyance was taken with knowledge of the existence of a prior unrecorded instrument.

In the case under consideration it is not contended by appellant that at the time the Douglases made the $600 loan that they, or either of them, had any knowledge of either the prior unrecorded equitable mortgage of the respondent Schelling or of the Conley deed of trust. Such being the case, their mortgage, having been taken in good faith and recorded prior to the Schelling deed of trust, constituted a prior lien thereto. Conley could not make the Douglas mortgage secondary to his, because his unrecorded instrument, while valid between himself and Rexford Thomas, was invalid as against the Douglases, who took without notice. By the assignment of the Douglas mortgage Tooby took all the rights of the Douglases, including the right of priority.

Section 1214 of the Civil Code rather than section 1217 is more properly applicable to the case at bar:

"Every conveyance of real property" [and under the provisions of section 1215 of the Civil Code the word "conveyance" includes mortgages] . . . "is void as against any subsequent . . . mortgagee of the same property . . . in good faith and for a valuable consideration whose conveyance is first duly recorded. . . . "

In construing a statute similar in effect the case of *Coonrod* v. *Kelly*, 119 Fed. 841, is authority for the rule which Jones on Mortgages, eighth edition, volume 1, page 827, and other text-writers have seen fit to adopt:

"The assignee of a mortgage takes all the rights of his assignor, and if, in the hands of the assignor, it was entitled to priority over another mortgage under the statute because of its priority of record, and of the fact that it was taken by the assignor for a full consideration, and without notice that the other mortgage had in fact been previously executed, it has the same priority in the hands of the assignee, although he may have taken it with knowledge of the facts."

This we believe to be the correct rule. Were it otherwise, the owner and holder of a negotiable instrument secured by a first lien against real property (Tooby in the present instance) might frequently be unable to negotiate the note and assign the mortgage because the purchaser thereof would receive no better than a second (or, as in this case, a third) mortgage. We feel certain that no such anomalous condition was contemplated by the code.

The motion for diminution of the record is denied, and the judgment appealed from is affirmed.

Sturtevant, J., and Koford, P. J., concurred.