[Civ. No. 7460. Fifth Dist. May 17, 1984.]

JUDA LEE HEAD, Plaintiff and Appellant, v.
RAYMOND C. CRAWFORD et al., Defendants and Respondents.

COUNSEL

Rusca & Bumanglag and George Bumanglag for Plaintiff and Appellant.

Hurlbutt, Clevenger, Long & Vortmann, James P. Hurlbutt and Howard R. Broadman for Defendants and Respondents.

OPINION

**WOOLPERT, J.**—Plaintiff wife asks this court to hold that the lis pendens she filed in her dissolution proceeding protected the entire community property from a subsequently recorded bail bond lien incurred without her knowledge by her husband. We agree the lis pendens procedure applies to dissolution actions but find in this case it did not have the effect contemplated by the wife.

THE FACTS

Plaintiff Juda Lee Head (hereafter Juda) and Tracy Lee Head (hereafter Tracy) were married in 1962. In 1963 they purchased real property in Tulare County which we will call the subject property. A copy of the "Agreement of Sale" was recorded the same year. That document describes the buyers as "husband and wife," and as "joint tenants."

In 1980, Juda alleged she was severely beaten after confronting Tracy with accusations that he had abused their foster children. Juda and Tracy separated. Charges were immediately filed and Tracy was arrested the next day.

On the day of his arrest, Tracy signed a "Bail Bond Agreement" and a "Defendant's Financial Declaration" furnished by defendant Crawford, a bail bondsman. The subject property was listed as security in the financial statement. The security agreement was executed without Juda's knowledge or consent. The last sentence of the financial statement provides as follows: "I do hereby agree that *the recording* of this agreement shall constitute a lien on the above property until all monies due hereunder have been paid . . . ." Crawford (hereafter Bondsman) then caused defendant National Automobile and Casualty Insurance Company (hereafter National) to issue a bond for $25,000.

Juda filed an action for dissolution of the marriage. She later filed a "Declaration of Homestead" and recorded a "Lis Pendens" which specifically described the subject property. Tracy was served with the dissolution papers. He has since disappeared. After Tracy failed to appear in the criminal court, bail was forfeited and Bondsman recorded the bond agreement and financial declaration.

In May of 1980, an "Interlocutory Decree for Dissolution of Marriage" was entered. The subject property was confirmed to be community property. However, it was awarded to Juda "to hold forthwith as separate property." A final decree dissolving the marriage followed. Juda then filed this action to cancel the security agreement and to quiet title in her as sole owner of the subject property. Juda and defendants each filed a motion for summary judgment. The court ruled in favor of defendants. She appeals from that judgment.

## TRIAL COURT CONCLUSION

The lower court held, in pertinent part, as follows: "The Court is persuaded that Defendant's [sic] [Bondsman and National] position is correct. Tracy Lee Head had the power to encumber his half interest in the community realty without the consent of his wife (plaintiff). The encumbrance was not defeated by the subsequent recordation of lis pendens, declaration of homestead, or the judgment of dissolution of marriage for the reasons set forth in Defendant's [sic] points and authorities."

## PRESENT ISSUES

Juda puts forth three arguments on appeal. First, the doctrine of lis pendens operates in dissolution actions and the protections afforded her by that doctrine require reversal. Second, Tracy did not have the power to encumber the community real property once the couple had separated, reversal therefore being required. Third, even if the lis pendens was without effect

and Tracy could encumber one-half the value of the property, that value should be set as closely as possible to the date the security agreement was signed.

### Standard of Review

A motion for summary judgment will be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The rules relating to such motions are well established and need not be repeated by us. (See *Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)

### Lis Pendens in Dissolution Proceedings

Many years ago the Supreme Court seemed to rule out a notice of pendency of action as a viable priority device in a divorce action, concluding: "And the notice of *lis pendens* filed by appellant during the pendency of the divorce suit had no legal significance. (See *Sun Ins. Co.* v. *White* [1898] 123 Cal. 196 [55 P. 902].)" (*Mayberry* v. *Whittier* (1904) 144 Cal. 322, 326 [78 P. 16].)

Little attention has been given to the actual holding in *Sun.* Although the court disclaimed any need to consider the effect of a lis pendens in divorce actions, it devoted five pages of the opinion to the use of lis pendens in divorce actions in other states and the reasons why in this California proceeding the pleadings to which the lis pendens referred did not satisfy the specificity requirements which might have placed the creditor on notice. In *Mayberry* the court's pointed conclusion was a product of the times, and perhaps an overstatement. At that time, "[t]he pendency of proceedings for a divorce [did] not, of itself, interrupt the exercise of the husband's powers." (*Lord* v. *Hough* (1872) 43 Cal. 581, 585.) With the Family Law Act and its equal treatment of spouses for purposes of marital property rights and obligations came an express approval of the use of lis pendens.

■ The California Rules of Court provide: "In a proceeding under the Family Law Act, either party may record a notice of pendency of the proceeding under the circumstances and in the manner provided by Section 409 of the Code of Civil Procedure." (Cal. Rules of Court, rule 1219, eff. Jan. 1, 1970, pursuant to authority contained in Cal. Const., art VI, § 1, and Civ. Code, § 4001.) We find no basis to question the validity of the rule. Instead, we must deal with its effect.

In dictum, in *Kane* v. *Huntley Financial* (1983) 146 Cal.App.3d 1092, 1096 [194 Cal.Rptr. 880], the court suggested a wife could have protected

her separate property claim to certain marital property by filing a lis pendens when she commenced action against her husband. However, absent a lis pendens, her claim that joint tenancy residential property had been orally transmuted to her separate property failed against the trust deed lien of a postseparation creditor of her husband. Under these circumstances the creditor could justifiably rely on record title.

In the present case the wife did file a lis pendens; therefore, we must determine what it accomplished. Ordinarily, "[a]nyone with actual notice of the pendency of the proceeding who acquires an interest in the property takes subject to any judgment that may be rendered therein. (Code Civ. Proc., § 1908, subd. 2.)" (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405].) The lis pendens procedure accomplishes the same result. By its constructive notice it republishes the pleadings, drawing attention to the factual allegations and other facts necessarily arising from those pled. (*Ibid.*)

We agree with the *Kane* observation. A spouse who files a lis pendens to draw attention to the dissolution petition *may* obtain priority over a creditor of the other spouse if the creditor either acts with constructive notice or fails to record a lien document until after the filing of the lis pendens. The priority dates from the filing of the notice, and for those who take subject to the notice the priority depends upon a judgment being reached on the pleadings previously filed. (Code Civ. Proc., §§ 409, 1908.)

It is probable the *Sun* court would have prescribed certain requirements if it found the lis pendens procedure applied to the divorce action before it. Citing Freeman's Treatise on Judgments, and out-of-state cases, the court emphasized that the divorce pleadings must designate the specific property to be affected and the nature of the relief sought. (*Sun Insurance Co.* v. *White* (1898) 123 Cal. 196, 201; compare Code Civ. Proc., § 409.)

In making use of the lis pendens, the spouse accomplishes positive and negative results. Affirmatively, the spouse's asserted title rights are declared as a warning to the creditor who would rely on record ownership. Negatively, the spouse will be estopped from later challenging the creditor who relies on the spouse's representations in the pleadings.

In filing her petition and lis pendens, Juda publicly acknowledged her position that the subject property belonged to the community and should be distributed as such. She alleged no separate property interest in the property and obtained no court order or judgment which would give her a priority position. Therefore, the lis pendens only fortified the right of the bonding

company to rely on the husband's similar statement that the subject property was the residential property of the spouses.

We do not speculate whether a petition alleging an uncertainty as to title would prevail over subsequent creditors of the other spouse. Nor are we presented any question arising from the 1983 enactment of Civil Code section 4800.1 which, according to the legislative committee comment, "has the effect of limiting existing law which permits transmutations of [joint tenancy] property by oral agreements and implications from unilateral statements of a party." (Legis. committee com., West's Ann. Civ. Code, § 4800.1 (1984 pocket pt.) pp. 25-26; Deering's Ann. Civ. Code, § 4800.1 (1984 pocket pt.) p. 136.)

### ONE-HALF OF THE PROPERTY WAS ENCUMBERED

■ The trial court determined that Tracy had the power, after their separation, to encumber his one-half interest in the community real property without Juda's knowledge. We agree. (*Mitchell* v. *American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220 [167 Cal.Rptr. 760].)

In *Mitchell* the court interpreted Civil Code section 5127, which provides, in pertinent part, as follows: "Except as provided in Sections 5113.5 and 5128, either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; . . ."

As the *Mitchell* court phrased it, the rule is as follows: "In the context of a conveyance, the section has been understood to mean that 'a deed to community real property for a valuable consideration, executed without the wife's consent, while ineffective as to her interest, is valid and binding as to the husband's half interest. . . . In such a case the conveyance of the wife's one-half interest without her consent is not void but voidable. . . .' (*Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869, 876-877 [79 Cal.Rptr. 381].)

"By analogy, where the case involves an encumbrance, the power of the consenting spouse extends in absolute terms no further than to burden his or her own interest, leaving in the nonconsenting spouse the ability to remove the encumbrance insofar as it relates to that spouse's interest." (*Mitchell* v. *American Reserve Ins. Co., supra,* 110 Cal.App.3d at p. 223.)

In its holding, *Mitchell* restates a longstanding rule in California. (*Heuer v. Heuer* (1949) 33 Cal.2d 268 [201 P.2d 385]; *Schelling* v. *Thomas* (1929) 96 Cal.App. 682 [274 P. 755].)

Juda reminds us that she and Tracy were separated when Tracy encumbered the property. She would have this court read Civil Code section 5127 as narrowly as possible so as to preclude encumbrances of *any* interest of community real property made without mutual knowledge and consent of the spouses when they are separated at the time the subject property is encumbered. This, however, is not the rule. Final dissolution of the marriage is the relevant date, not the time of separation: A marriage exists until final dissolution.

Since the community is liable for debts arising during the marriage, the community property may still be liable for debts occurring after separation. (*Bank of America etc. Assn.* v. *Mantz* (1935) 4 Cal.2d 322 [49 P.2d 279]; *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 600 [141 Cal.Rptr. 597].) Although the nonconsenting spouse may clear one-half of the community real property from the lien, the community property of each may still be liable for community debts if the creditor seeks to pursue the usual creditor's remedies. (*Mitchell* v. *American Reserve Ins. Co., supra,* 110 Cal.App.3d 220, 223.) In this case the bonding company has not been afforded personal relief against Juda. The court therefore avoided any need to determine whether the bail bond created a community debt.

## VALUATION DATE

Juda requests this court to set a valuation date for the property in question. She suggests a few dates, preferring one as close to the date of separation as possible: We assume the property is increasing in value.

When Juda was awarded the property as her sole and separate property by the dissolution court, she took the property subject to the bond lien. Therefore, when the trial court awarded defendants National and Bondsman a lien against an undivided one-half interest in the real property, it awarded them a security interest in one-half of the property up to the amount of the lien. The value of the property is determined as a consequence of the sale. To the extent the one-half interest does not satisfy the lien, defendants would then have an action against Tracy for an unsecured debt equal to the balance. To the extent that the one-half interest in the real property exceeded the lien, that amount would become Juda's separate property.

We make use of the conclusion reached in *Kane* v. *Huntley Financial, supra,* 146 Cal.App.3d 1092, 1098, substituting our parties: "[Bondsman

and National are] entitled to a [lien] encumbering one-half of the property. [They] will be able to cause a . . . sale of that interest only. The buyer at the sale will become a tenant in common with [Juda] and will be able to force partition and sale of the property under Code of Civil Procedure section 872.010 et seq." A similar result was reached in *Kinney* v. *Vallentyne* (1975) 15 Cal.3d 475 {124 Cal.Rptr. 897, 541 P.2d 537], dealing with a judgment lien and subsequent expenditures on the property by the objecting spouse.

The judgment is affirmed.

Zenovich, Acting P. J., and Martin, J., concurred.