Filed 9/1/15  Palm Woodlake, LLC v. City of Los Angeles CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PALM WOODLAKE, LLC, | B254502 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468109) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Judgment reversed.

Tritt & Tritt, James F. Tritt; William Hancock, Jr., APLC and William F. Hancock, Jr., for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Amy Jo Field, Assistant City Attorney, and Juliann Anderson, Deputy City Attorney, for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff and Appellant Palm Woodlake, LLC, appeals from the trial court's finding that Defendant and Respondent City of Los Angeles's lien on the property pursuant to Government Code section 54988 survived Woodlake's foreclosure sale of the property. Palm Woodlake asserts that its deed of trust on the property had priority over the City's lien, and foreclosure on the deed of trust extinguished the City's lien. We agree and reverse the judgment of the trial court. We conclude that the City's lien had the priority of a judgment lien pursuant to statute, and as a junior encumbrance, was extinguished by Palm Woodlake's foreclosure sale.

## FACTS AND PROCEDURAL BACKGROUND

Hilario F. Espinosa purchased a 32-unit apartment building located at 5119 Avalon Boulevard, Los Angeles, California, in 2009 with a loan for $1.2 million from Mid Valley Services, Inc. As consideration for the loan, Espinosa executed a promissory note secured by a deed of trust for the property, recorded on July 9, 2009. On July 21, 2009, Mid Valley assigned its interest in the Espinosa note and deed of trust to a group of individual investors in exchange for $1.2 million. The individual investors recorded the assignment on August 25, 2009.

In the latter part of 2010, Espinosa allowed the property to fall into disrepair and failed to correct code violations that the City of Los Angeles listed in a letter to him. In November 2010, the Los Angeles Fire Department issued Espinosa and the tenants a notice to vacate, informing them that they had to quit the property due to fire hazards. The notice to vacate informed Espinosa that he was responsible for tenant relocation costs pursuant to Health and Safety Code section 17975. Health and Safety Code section 17975 provides that "[a]ny tenant who is displaced or subject to displacement from a residential rental unit as a result of an order to vacate or an order requiring the vacation of a residential unit by a local enforcement agency as a result of a violation so extensive and of such a nature that the immediate health and safety of the residents is endangered, shall be entitled to receive relocation benefits from the owner." Because Espinosa failed to pay these relocation benefits to the tenants, the City advanced relocation payments

2

pursuant to Health and Safety Code section 17975.5, subdivision (a).  On December 6, 2010, the City recorded notice of a pending lien pursuant to Government Code[1] section 54988, subdivision (a)(1), on the property for $384,650 (the amount the City advanced to the tenants for relocation expenses).  On December 7, 2010, the City recorded a lien on the property for $384,650 pursuant to section 54988, subdivision (c).  The individual investors still held Espinosa's note for $1.2 million secured by the deed of trust on the property at this time.

Subsequently, on December 17, 2010, December 20, 2010, December 27, 2010, and January 10, 2011, the individual investors assigned their interests in the Espinosa 2009 deed of trust to Plaintiff Palm Woodlake, LLC.  The individual investors each owned an interest in Palm Woodlake, equivalent to their interest in the deed of trust.

Espinosa defaulted on the 2009 loan and Palm Woodlake foreclosed on the Espinosa Deed of Trust on January 12, 2011. Palm Woodlake bought Espinosa's apartment complex from foreclosure for $500,000, paid for in a credit bid.  Palm Woodlake recorded the trustee's deed upon sale on January 21, 2011.

Notwithstanding the foreclosure sale, the City claimed that it had the right to pursue its reimbursement claims pursuant to the $384,650 lien against the property.  Palm Woodlake subsequently sued the City to determine the rights of the parties.  The parties stipulated to the facts stated above and the court concluded that the City's lien had priority over Palm Woodlake's interest.  The court held that the City's lien was not extinguished by Palm Woodlake's foreclosure and remained on the property.

---

[1]     All subsequent statutory references are to the Government Code unless otherwise indicated.

**DISCUSSION**

At issue on appeal is the priority of the deed of trust as to the City's lien, and the effect of Palm Woodlake's foreclosure sale on the City's lien. "Because this issue involves the application of law to undisputed facts, we review the matter de novo." (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.) A question of statutory interpretation is also a question of law that is reviewed de novo. (*Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134.) "The touchstone of statutory interpretation is the probable intent of the Legislature. When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citation.] When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history." (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.) Consistent with the de novo standard of review, the application of a statute to undisputed facts must be evaluated by a reviewing court without any deference to the trial court. (*Mentzer v. Hardoin* (1994) 28 Cal.App.4th 1365, 1369.)

**1.     The City's Lien Has the Same Priority, Force, and Effect as a Judgment Lien**

It is well established that "a lien which is the creature of statute can be enforced only in the manner prescribed by the statute." (*Chase v. Putnam* (1897) 117 Cal. 364, 367-368.) Section 54988 gives the City the power to collect the tenant relocation expenses from the owner. Section 54988, subdivision (a)(1)(G) provides that if the City gives notice to the owner of the costs owed to the City for nuisance abatement and the owner fails to pay those costs to the City within 45 days of notice, the City may collect the amount due by "making the amount of the unpaid . . . charge a proposed lien against the property that is the subject of the enforcement activity." Section 54988, subdivision (a)(1)(G) further states that "[e]xcept as provided in subdivision (c), the amount of the proposed lien may be collected at the same time and in the same manner as property taxes are collected. All laws applicable to the levy, collection, and enforcement of ad valorem

4

taxes shall be applicable to the proposed lien." Notably, subdivision (c) of section 54988 states that if the City decides to collect the debt via the lien, the lien "shall attach upon recordation in the office of the county recorder of the county in which the property is situated and *shall have the same force, priority, and effect as a judgment lien, not a tax lien*." (Italics added.) The plain language of this statute requires that, if the City chooses to collect the debt via a lien, the lien will have the same priority as a judgment lien, and not a tax lien.

Here, Espinosa did not pay the outstanding $384,650, and the City recorded its lien on the property for $384,650 on December 7, 2010. Pursuant to section 54988, subdivision (c), we treat the City's lien as a judgment lien that attached on December 7, 2010 (the date it was recorded), for the purpose of determining its priority amongst security interests on the property. The City's lien thus has the priority of a 2010 judgment lien in this case.

### 2. Palm Woodlake's Deed of Trust Has Priority Over the City's Lien

"California starts with a ' "first in time, first in right" system of lien priorities,' under which 'a conveyance recorded first generally has priority over any later-recorded conveyance.' [Citations.]" (*First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1313.) As this case deals with two timely recorded encumbrances (the deed of trust recorded in 2009 and the City's lien recorded in 2010), we apply the "first in time, first in right" principles in analyzing the priority of interests below.

We conclude that the 2009 deed of trust held by Palm Woodlake had priority over the City's 2010 lien, as the deed of trust was first in time and first in right. Although Palm Woodlake was assigned and recorded its interest in the deed of trust after the City recorded its lien, Palm Woodlake stood in the shoes of Mid Valley Services in asserting its rights under the deed of trust. (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 49, italics omitted ["An assignment transfers the interest of the assignor to the assignee. Thereafter, ' "[t]he assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment." ' [Citation.]"].) "A recorded assignment of note and

deed of trust vests in the assignee all of the rights, interests of the beneficiary [citation] including authority to exercise any power of sale given the beneficiary." (*Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 744; Civ. Code, § 2932.5.) In other words, "Title conveyed by a trustee's deed relates back to the date when the deed of trust was executed. [Citation.] The trustee's deed therefore passes the title held by the trustor at the time of execution." (*Dover Mobile Estates v. Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494, 1498.) "By the assignment of the . . . mortgage, [the assignee] took all rights of the [assignor], including the right of priority." (*Schelling v. Thomas* (1929) 96 Cal.App. 682, 688 (*Schelling*).)

Here, the trustee's deed of trust attached to the property in 2009 when it was executed and recorded by Mid Valley. When that deed of trust was transferred to the individual investors and subsequently to Palm Woodlake, the priority of that security interest never changed. Contrary to the City's assertions, Palm Woodlake did not create a new encumbrance on the property when it was assigned the deed of trust. The City argues that Palm Woodlake takes the property subject to the City's lien because it was not a bona fide encumbrancer or a bona fide purchaser. The City asserts that Palm Woodlake knew about the City's lien when it purchased the property from the foreclosure sale, and thus must take the property subject to the City's lien.

Yet, Palm Woodlake's awareness of the City's lien is irrelevant to determining priority of interests within this set of facts. As explained above, Palm Woodlake stood in Mid Valley's shoes as the assignee of the deed of trust, and held and exercised the same right to foreclose on the property as was held by Mid Valley in 2009. Palm Woodlake's knowledge of the existence of a junior lien on the property does not change the well-established principle that "the trustee's deed conveys to the purchaser the trustor's interest as of the date that the deed was recorded. [Citations.] The purchaser's title is free and clear of 'all rights of the trustor or anyone claiming under or through the trustor' including liens that have attached to the property after execution of the foreclosed deed of trust." (*Homestead Savings v. Darmiento* (1991) 230 Cal.App.3d 424, 437.)

6

The Court of Appeal in *Schelling* held that an assignee of a mortgage takes all of the rights of the assigning bona fide encumbrancer, including the right of priority. The Court stated that this principle applies even if the assignee knows of a competing interest, of which the assignor was unaware when its mortgage first attached to the property. (*Schelling, supra,* 96 Cal.App. at p. 689.) The Court explained the rationale behind this rule stating that, "[w]ere it otherwise, the owner and holder of a negotiable instrument secured by a first lien against real property . . . might frequently be unable to negotiate the note and assign the mortgage because the purchaser thereof would receive no better than a second [or a third] mortgage." (*Ibid.*)

As the eventual assignee of the 2009 deed of trust, Palm Woodlake stood in Mid Valley's shoes when it exercised its power of sale. Palm Woodlake's interest related directly back to Mid Valley's original deed of trust on the property and Palm Woodlake took all of Mid Valley's rights under the deed of trust, including the right of priority. Thus, Palm Woodlake's interest as assignee of the 2009 deed of trust had priority over the City's subsequently created 2010 lien because it was first in time.

## 3.    The Foreclosure Sale Extinguished the City's Lien

Because Palm Woodlake's deed of trust had priority over the City's judgment lien, Palm Woodlake's foreclosure sale of the property in satisfaction of Espinosa's note extinguished the City's lien. "The foreclosure sale eliminates or 'wipes out' all interests that were junior in priority to the deed of trust or mortgage; the title of the purchaser is not subject to such junior interests, even though they attached to the property before the foreclosure sale." (5 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 11:100; *Dover Mobile Estates v. Fiber Form Products, Inc., supra,* 220 Cal.App.3d at p. 1498 ["Liens which attach after execution of the foreclosed trust deed are extinguished. The purchaser at the trustee sale therefore takes title free of those junior or subordinate liens."].) "The statutory scheme concerning nonjudicial foreclosure contemplates that in order to protect its interest, a junior lienor must pay the trustor's obligation to the senior lienor. [Citations.] If a junior lienor does not cure the default in the senior obligation or redeem at the senior foreclosure, its lien will be extinguished at the foreclosure sale unless the

7

successful bidder purchases at a price high enough to pay off the senior indebtedness and the junior indebtedness as well." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1023; *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1121 [stating the same].)

A judgment creditor's lien, like the lien held by the City in this case, is extinguished by a sale under a deed of trust. (*Roseburg Loggers, Inc. v. U.S. Plywood-Champion Papers, Inc.* (1975) 14 Cal.3d 742, 750, citing *Wayland v. State of California* (1958) 161 Cal.App.2d 679, 681-682 (*Wayland*).) The opinion in *Wayland* rests on facts very similar to the facts of this case. In *Wayland*, the State of California recorded a lien to secure delinquent unemployment taxes pursuant to the relevant provisions of the Unemployment Insurance Code. (*Wayland,* at p. 680.) Following foreclosure of a previously recorded deed of trust, the subsequent owners brought suit to quiet title against the state's lien claim. (*Id.* at p. 680.) Former section 1703 of the Unemployment Insurance Code provided that the lien created shall have " 'the force, effect, and priority of a judgment lien.' " (*Wayland,* at p. 681.) The Court of Appeal affirmed the lower court's judgment quieting the purchaser's title against the state's claim because the foreclosure of the deed of trust extinguished the state's lien.

Like the state's lien in *Wayland,* the City's lien here was extinguished by Palm Woodlake's foreclosure sale. We therefore reverse the trial court's holding that the City's lien survived foreclosure.

In addition, the City asserts that even if foreclosure extinguished its lien on the property, it can still collect the $384,650 by placing that amount on the property's present tax bill. The City fails to support this argument with citation to applicable authority. We decline to address arguments not supported by citation to relevant authority. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Furthermore, when the debt cannot be satisfied by the sale of the property, "any taxes which are due are transferred to the 'unsecured roll.' (Rev. & Tax. Code, §§ 134, 4986, 2921.5.)" (*Garcia v. County of Santa Clara* (1978) 87 Cal.App.3d 319, 324.)

## DISPOSITION

We reverse the judgment and direct the trial court to enter judgment in favor of Palm Woodlake.  Plaintiff and Appellant Palm Woodlake, LLC is awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        KITCHING, Acting P. J.

I concur:



            ALDRICH, J.




            JONES, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9